Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address

**Luis G. Torres**
**1712 W. Beverly Blvd.**
**Suite 202**
**Montebello, CA 90640**
**(323)887-1150 Fax: (323)887-1149**
**236915**
luis.torresbk@gmail.com

FOR COURT USE ONLY

☐ Individual appearing without attorney
☒ Attorney for: Debtors

# UNITED STATES BANKRUPTCY COURT
# CENTRAL DISTRICT OF CALIFORNIA

In re:

**Valentin Espinoza**
**Edith Espinoza**

CASE NO.: **2:14-bk-26945-SK**
CHAPTER: **13**

**DEBTOR'S NOTICE OF MOTION AND**
**MOTION TO AVOID JUNIOR LIEN ON**
**PRINCIPAL RESIDENCE**
**[11 U.S.C. § 506(d)]**

Debtor(s).

DATE:  **1/08/14**
TIME:  **8:30AM**
COURTROOM:  **1575**

1. TO: **Honorable Sandra R. Klein, Kathy A. Dockery, Chapter 13 Trustee, RBS Citizens, N.A., Green Tree Servicing, LLC and All Other Interested Parties**

2. NOTICE IS HEREBY GIVEN that on the above date and time and in the indicated courtroom, Movant in the above-captioned matter will move this court for an order granting the relief set forth in the motion and accompanying supporting documents served and filed herewith.

3. **Hearing Location:**
   ☒ 255 East Temple Street, Los Angeles, CA 90012          ☐ 411 West Fourth Street, Santa Ana, CA 92701
   ☐ 21041 Burbank Boulevard, Woodland Hills, CA 91367      ☐ 1415 State Street, Santa Barbara, CA 93101
   ☐ 3420 Twelfth Street, Riverside, CA 92501

4. **Your rights may be affected.** You should read these papers carefully and discuss them with your attorney, if you have one. *(If you do not have an attorney, you may wish to consult one.)*

5. **Deadline for Opposition Papers:** This Motion is being heard on regular notice pursuant to LBR 9013-1. If you wish to oppose this motion, you must file a written response with the court and serve a copy of it upon the Movant or Movant's attorney at the address set forth above no less than 14 days prior to the above hearing date. If you fail to file a written response to this Motion within such time period, the court may treat such failure as a waiver of your right to oppose the Motion and may grant the requested relief.

6. **Hearing Date Obtained Pursuant to Judge's Self-Calendaring Procedure:** The undersigned hereby verifies that the above hearing date and time were available for this type of Motion according the judge's self-calendaring procedures.

Date: **December 10, 2014**

**Law Offices of Luis G. Torres**
Printed name of law firm *(if applicable)*
**Luis G. Torres 236915**
Printed name of Debtor or attorney for Debtor
**/s/ Luis G. Torres**
Signature of Debtor or attorney for Debtor

This form is optional. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

December 2012                                    Page 1                         **F 4003-2.4.JR.LIEN.MOTION**

**MOTION TO AVOID JUNIOR LIEN ON PRINCIPAL RESIDENCE [11 U.S.C. § 506(d)]**
**(DEBTOR:        Valentin Espinoza**
**Edith Espinoza        )**

**NAME OF CREDITOR HOLDING JUNIOR LIEN ("Respondent"): RBS Citizens, N.A.**

**1. Property at Issue**: Debtor moves to avoid the junior deed of trust, mortgage or other encumbrance (Lien) encumbering the following real property (Property), which is the principal residence of debtor.

Street address: **14534 Painter Avenue**
Unit number: _____
City, state, zip code: **Norwalk, CA 90650**

Legal description of Property for document recording number *(including county of recording)*:
    **See attached Exhibit "1"**

☐ See attached page for legal description of Property or document recording number.

**2. Case History:**
    a. A voluntary petition under chapter ☐ 7 ☐ 11 ☐ 12 ☒ 13 was filed on *(specify petition date)*:  **9/03/14**
    b. ☐ An Order of Conversion to chapter 13 was entered on *(specify date)*:  _____

**3. Grounds for Avoidance of Junior Lien:**

    a. As of *(date of title review)* **12/10/14**, the Property is subject to the following liens in the amounts specified securing the debt against the Property, that the Debtor seeks to have treated as indicated:

        (1)  *(Name of holder of 1st lien)*  **NRZ Pass-Through Trust V, US Bank National Association not in its Individual Capacity but Solely as Pass-Through Trust Trustee** in the amount of $ **345,811.48**.

        (2)  *(Name of holder of 2nd lien)* **RBS Citizens, N.A.** in the amount of $ **85,505.80** ☒ is ☐ is not to be avoided;

        (3)  *(Name of holder of 3rd lien)*  _____  in the amount of $  _____  ☐ is ☐ is not to be avoided;

        ☐ See attached page for additional lien(s).

        As of *(date of valuation/appraisal)*  **10/02/14**, Property is worth no more than *(value per valuation/appraisal)* $  **315,000.00** .

    b. As a result, Respondent's Lien encumbering the Property is wholly unsecured.

    c. **Evidence in Support of Motion:**

        (1) ☒ The amount of the lien identified in paragraph 3(a)(1) is based on *(type of evidence)* **September 2014 Mortgage Statement**, attached hereto and identified as Exhibit **"2"**.

        (2) ☒ The amount of the lien identified in paragraph 3(a)(2) is based on *(type of evidence)* **Proof of Claim filed by Green Tree Servicing, LLC**, attached hereto and identified as Exhibit **"3"**.

        (3) ☐ The amount of the lien identified in paragraph 3(a)(3) is based on *(type of evidence)*  _____, attached hereto and identified as Exhibit  ___.

        (4) ☒ The relative priority of the liens encumbering the Property is established by evidence attached as Exhibit **"4"** and **"5"** (Deeds of Trust).

        (5) ☒ The value of the Property from paragraph 3(b) is based on *(type of evidence)*  **Appraisal Report by Kenneth Le**, attached as Exhibit **"6"**.

---

This form is optional. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

December 2012                                    Page 2                    **F 4003-2.4.JR.LIEN.MOTION**

(6) ☒ Debtor submits the attached Declaration(s): **Declaration of Luis G. Torres**, **Declaration of Valentin Expinoza**, and **Declaration of Kenneth Le**

(7) ☒ Other evidence *(specify/identify supplemental evidence)*: **Schedule C** attached as Exhibit **"7"**.

d. **WHEREFORE, Debtor prays that this court issue an order granting the this motion and establishing that:**

(1) The Property is valued at no more than *(requested value)* $**315,000.00** .

(2) No payments are to be made on the secured claim of the Respondent, and regular mortgage maintenance payments are not to be made, before the Debtor's ☒ completion of the chapter 13 plan, or ☒ receipt of a chapter 13 discharge.

(3) Respondent's(s') claim on the junior position lien(s) shall be allowed as a nonpriority general unsecured claim(s) in the amount per the filed Proof of Claim.

(4) The avoidance of the Respondent's(s') junior lien(s) is contingent upon: Debtor's ☒ completion of the chapter 13 plan, or ☒ receipt of a chapter 13 discharge.

(5) The Respondents shall retain its/their lien(s) in the junior position for the full amount due under the corresponding note and lien in the event of either the dismissal of the Debtor's chapter 13 case, the conversion of the Debtor's chapter 13 case to any other chapter under the United States Bankruptcy Code, or if the Property is sold or refinanced prior to the Debtor's ☒ completion of the chapter 13 plan, or ☒ receipt of a chapter 13 discharge.

(6) In the event that the holder of the first position lien or any senior lien on the Property forecloses on its interest and extinguishes the Respondent's(s') lien rights prior to the Debtor's completion of the chapter 13 plan and receipt of a chapter 13 discharge, the Respondent's(s') lien(s) shall attach to the proceeds greater than necessary to pay the senior lien, if any, from the foreclosure sale, subject to the priority of any such junior lien(s).

e. ☐ See attached continuation page for additional provisions.

Date: **December 10, 2014**                    Respectfully submitted,

_____

**/s/ Luis G. Torres**
Signature of Debtor or attorney for Debtor

**:Luis G. Torres**
Printed Name of Debtor or attorney for Debtor

This form is optional. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

December 2012                    Page 3                    **F 4003-2.4.JR.LIEN.MOTION**

<u>DECLARATION OF LUIS G. TORRES</u>

I, Luis G. Torres**,** declare**:**

1.    I am an attorney duly licensed to practice law before all the courts of the State of California and the Central District of California. I am the attorney of record for Valentin Espinoza and Edith Espinoza. If called to testify, I would and could competently do so, as to the following facts of my own personal knowledge.

2.    I have reviewed all the pertinent records and files pertaining to the Debtors' property, located at 14534 Painter Avenue, Norwalk, California 90650.

3.    Debtors are the owners of the real property located at 14534 Painter Avenue, Norwalk, California 90650 ("Real Property") which they purchased on or about March 30, 2007. The legal description of the Real Property is the legal description of the Real Property is described in attached Exhibit "1".

4.    The Real Property is encumbered with two mortgages. The first mortgage is held by NRZ Pass-Through Trust V, US Bank National Association not in its Individual Capacity but Solely as Pass-Through Trust Trustee ("NRZ") and is currently being serviced by Fay Servicing, LLC. The first mortgage has an outstanding balance of $345,811.48. Said creditor and loan information was listed on Debtor's Schedule D, which was filed on September 3, 2014. The first mortgage is secured by a deed of trust recorded on March 3, 2007 in the amount of $348,000.00 in favor of CitiMortgage, Inc., as seen in attached Exhibit "4". Also attached as Exhibit "4" is the last recorded Assignment of Deed of Trust dated November 6, 2014 with Instrument Number 20141179008 that transferred all beneficial interest under said Deed to NRZ.

5.    The second mortgage is held by RBS Citizens, N.A. and is currently being serviced by Green Tree Servicing, LLC. The second mortgage has an outstanding balance of $85,505.80. The second mortgage is secured by a deed of trust recorded on March 30, 2007 in the amount of $87,000.00 in favor of National City Bank, as seen in attached Exhibit "5". As seen on the second page of this deed of trust, this is a second mortgage and therefore subject to a first deed of trust. Also attached as Exhibit "5" is the last recorded Assignment of Deed of Trust dated September 28, 2009 that transferred all beneficial interest under said RBS Citizens, N.A.

1

6.    The value of the property is established by an appraisal dated October 2, 2014. Sometime after that, I received from Kenneth Le, License No AL042794, a copy of the appraisal which he prepared. Attached hereto, as Exhibit "6", and incorporated herein by reference is a true and correct copy of said appraisal prepared by Kenneth Le. At the time the petition was filed, the value of the property, as indicated by the Debtor's Declaration, was approximately $315,000.00. A homestead is not claimed on Schedule C since there is no equity at all in the property to exempt. A copy of Debtors' Schedule C is attached hereto as Exhibit "7", and incorporated herein by reference.

7.    Creditor RBS Citizens, N.A. has a lien on the property in the amount of $85,505.80. This amount is wholly unsecured as the value of the property is less than what is currently owed to NRZ on the first mortgage.

8.    Based on the value of the property and the amount owed on the first mortgage, the lien of RBS Citizens, N.A. is wholly unsecured and should therefore be avoided.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct and was executed on December 10, 2014.

DATED: December 10, 2014                    /s/ Luis G. Torres_____
                                            Luis G. Torres

2

<u>DECLARATION OF VALENTIN ESPINOZA</u>

I, Valentin Espinoza, do hereby declare:

1.   I am over the age of 18, have personal knowledge of the facts set forth and if called upon to testify in this action I could and would so testify completely thereto.

2.   I am one of the debtors the instant Chapter 13 bankruptcy proceeding filed on September 3, 2014 with Bankruptcy Case No. 2:14-bk-26945-SK.

3.   I own and reside in the real property located at 14534 Painter Avenue, Norwalk, California 90650 ("Real Property"). I purchased my Real Property on or about March 30, 2007.

4.   At the time we filed our bankruptcy case on October 2, 2014, I believe that our Real Property was valued at about $315,000.00. My opinion is based on my familiarity with my residence, neighborhood and recent sales in the area.

5.   At the time we filed our bankruptcy case, we had two deeds of trust secured by our residence. The first trust deed is held by NRZ Pass-Through Trust V, US Bank National Association not in its Individual Capacity but Solely as Pass-Through Trust Trustee and is currently being serviced by Fay Servicing, LLC. We owe about $345,811.48 on our first mortgage. Attached hereto, as Exhibit "2", is a true and correct copy of our September 2014 mortgage statement on said loan, indicating the balance owed. The second trust deed is owed to RBS Citizens, N.A. and is currently being serviced by Green Tree Servicing, LLC. We owe about $85,505.80 on our second mortgage. Attached hereto, as Exhibit "3", is a true and correct copy of the Proof of Claim filed by Green Tree Servicing, LLC, indicating the balance owed.

6.   On or about October 2, 2014, we hired Kenneth Le to appraise the Real Property. Attached hereto as Exhibit "6" is a true and correct copy of Mr. Le's appraisal.


I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and was executed on December 10, 2014 in Montebello, California.

DATED: December 10, 2014                    /s/ Valentin Espinoza
                                            Valentin Espinoza

1

### DECLARATION OF KENNETH LE

I, Kenneth Le, declare:

1. If called upon as a witness, I could and would testify as to the following facts of my own personal knowledge.

2. I am a licensed residential real estate appraiser with the California license number AL042794. I have taken the required classes and exams to qualify for such license under the Real Estate Appraisers' Licensing and Certification Law of the State of California.

3. I was asked to appraise property of the debtor, located at 14534 Painter Avenue, Norwalk, California 90650.

4. I am familiar with the real estate market in Los Angeles County. On or about October 1, 2014, I did appraise the property located at 14534 Painter Avenue, Norwalk, California 90650.

5. My conclusion, based on inspection of the interior and exterior of the property and comparable residences in the area, is $315,000.00, as of October 1, 2014. Attached hereto, as Exhibit "6", is a true and correct copy of my Restricted Use Appraisal Report, including my real estate appraisal license. The purpose of said report is for the user to make personal financial decisions.


I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and was executed on December 10, 2014.

Kenneth Le

1

# EXHIBIT "1"

## LEGAL DESCRIPTION

All that certain real property situated in the County of Los Angeles, State of California, described as follows:

Lot 50 of Tract No. 15584, in the City of Norwalk, County of Los Angeles, State of California, as per map recorded in Book 354 Page(s) 21 to 23 inclusive of Maps, in the Office of the County Recorder of said County.

Except therefrom all oil, gas, minerals, and other hydrocarbon substances lying below the surface of said land, but with no right to surface entry, as provided in deeds of record.

**EXHIBIT "2"**



P.O.Box 220720
Chicago, IL  60622

# Mortgage Statement
Statement Date 08/11/2014

If questions or concerns about your statement, please contact us at 1-800-495-7166 between the hours of 9:00am and 5:00pm Monday through Friday.

5-775-01196-0012807-003-1-000-100-000-000

VALENTIN ESPINOZA
EDITH ESPINOZA
1855 W KATELLA AVE STE 100
ORANGE CA  92867-3440

| Account Number | 46892 |
|---|---|
| Payment Due Date | 09/01/2014 |
| **Amount Due** | **$2,312.20** |

*If payment is received after 09/16/2014, $51.87 late fee will be charged.*

Property Address:

14534 PAINTER AVE
NORWALK CA 90650

## Account Information
| | |
|---|---|
| Outstanding Principal | $345,811.48 |
| Interest Rate | 3.000% |
| Prepayment Penalty | No |

## Explanation of Amount Due
| | |
|---|---|
| Principal | $0.00 |
| Interest | $864.53 |
| Escrow (for Taxes & Insurance) | $291.57 |
| **Regular Monthly Payment** | **$1,156.10** |
| Overdue Payments | $1,156.10 |
| Total Fees Charged | $0.00 |
| **Total Amount Due** | **$2,312.20** |

## Past Payments Breakdown
| | Paid Since Last Statement | Paid Year to Date |
|---|---|---|
| Principal | $0.00 | $0.00 |
| Interest | $864.53 | $6,916.24 |
| Escrow (for Taxes & Insurance) | $291.57 | $2,332.56 |
| Suspense (Unapplied Funds) | $0.00 | $0.00 |
| Fees | $0.00 | $0.00 |
| **Total** | **$1,156.10** | **$9,248.80** |

## Important Messages
*According to the Forbearance Plan that started on -0/8-/2014, Fay Servicing has changed the amount of your next payment due to $1376.96. Please pay $1376.96 by -0/8-/2014 to keep your account in good standing.*

*We are a debt collector, and information you provide to us may be used to collect a debt. However, if you have filed for bankruptcy, we will fully respect any applicable automatic stay, modification or discharge. Further, if you filed Chapter 7 bankruptcy, received a discharge, and this loan was not reaffirmed in the bankruptcy case, we will exercise only in rem rights as allowed under applicable law and will not attempt to collect, recover or offset the discharged debt as your personal liability. Please be advised that Fay Servicing will report both negative and positive information to the credit bureaus regarding your account.*

**EXHIBIT "3"**

B 10 (Official Form 10) (04/13)

| UNITED STATES BANKRUPTCY COURT   CENTRAL DISTRICT OF CALIFORNIA | PROOF OF CLAIM |
|---|---|

| Name of Debtor:<br><br>VALENTIN ESPINOZA and EDITH ESPINOZA | Case Number:<br><br>14-26945-SRK13 | |

**NOTE:** *Do not use this form to make a claim for an administrative expense that arises after the bankruptcy filing. You may file a request for payment of an administrative expense according to 11 U.S.C. § 503.*

| Name of Creditor (the person or other entity to whom the debtor owes money or property)<br>RBS Citizens N.A | **COURT USE ONLY** |
|---|---|
| Name and address where notices should be sent:<br><br>Green Tree Servicing LLC<br>7340 S. Kyrene Rd. T-120<br>Tempe, AZ 85283<br>Telephone number:  (877)256-4871   email:  gt.arm.bk@gt-cs.com | ☐ Check this box if this claim amends a previously filed claim.<br><br>**Court Claim Number:** _____<br>*(If known)*<br><br>Filed on: _____ |
| Name and address where payment should be sent (if different from above):<br>Green Tree Servicing<br>345 St. Peter St.  L800R<br>St. Paul, MN 55102<br>Telephone number: (877)256-4871   email:  gt.arm.bk@gt-cs.com | ☐ Check this box if you are aware that anyone else has filed a proof of claim relating to this claim.  Attach copy of statement giving particulars. |

**1. Amount of Claim as of Date Case Filed:** $_____85,505.80_____

If all or part of the claim is secured, complete item 4.

If all or part of the claim is entitled to priority, complete item 5.

☐ Check this box if the claim includes interest or other charges in addition to the principal amount of the claim. Attach a statement that itemizes interest or charges.

**2. Basis for Claim:** __Money Loaned_____
(See instruction #2)

| **3. Last four digits of any number by which creditor identifies debtor:**<br><br>___5___9___9___6___ | **3a. Debtor may have scheduled account as:**<br>National City Bank_____<br>(See instruction #3a) | **3b. Uniform Claim Identifier (optional):**<br><br>_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _<br>(See instruction #3b) |
|---|---|---|

**4. Secured Claim** (See instruction #4)
Check the appropriate box if the claim is secured by a lien on property or a right of setoff, attach required redacted documents, and provide the requested information.

**Nature of property or right of setoff:** ☑Real Estate ☐Motor Vehicle ☐Other
Describe: 14534 PAINTER AVE, NORWALK, CA  90650

**Value of Property:** $_____
**Annual Interest Rate** __0.00__% ☑Fixed or ☐Variable
*Charged Off Second Mortgage*

**Amount of arrearage and other charges, as of the time case was filed, included in secured claim, if any:**

$_____19,838.10_____

**Basis for perfection:** __Deed of Trust_____

**Amount of Secured Claim:** $_____85,505.80_____

**Amount Unsecured:** $_____

**5. Amount of Claim Entitled to Priority under 11 U.S.C. § 507 (a). If any part of the claim falls into one of the following categories, check the box specifying the priority and state the amount.**

☐ Domestic support obligations under 11 U.S.C. § 507 (a)(1)(A) or (a)(1)(B).

☐Wages, salaries, or commissions (up to $12,475*) earned within 180 days before the case was filed or the debtor's business ceased, whichever is earlier - 11 U.S.C. § 507 (a)(4).

☐Contributions to an employee benefit plan - 11 U.S.C. § 507 (a)(5).

☐ Up to $2,775* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. § 507 (a)(7).

☐ Taxes or penalties owed to governmental units - 11 U.S.C. § 507 (a)(8).

☐Other - Specify applicable paragraph of 11 U.S.C. § 507 (a)(___).

**Amount entitled to priority:**

$_____

***Amounts are subject to adjustment on 4/01/16 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment***

**6. Credits.** The amount of all payments on this claim has been credited for the purpose of making this proof of claim. (See instruction #6)

**EXHIBIT "4"**

 **This page is part of your document - DO NOT DISCARD** 



**20070749515**  Pages: 022

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**03/30/07 AT 08:00AM**

Fee: 76.00
Tax: 0.00
Other: 0.00
Total: 76.00

**TitleCompany**

# TITLE(S) :





L E A D   S H E E T

**Assessor's Identification Number (AIN)**
**To be completed by Examiner OR Title Company in black ink.**      **Number of AIN's Shown**

—          —

  **THIS FORM IS NOT TO BE DUPLICATED**

E484772

2

## LAWYERS TITLE

Recording Requested By

Return To·
CitiMortgage, Inc.
Attn: Document Processing
P.O. Box 790021
St. Louis, MO  63179-0021

*23TM95-48*

Prepared By:
CitiMortgage, Inc.
1800 East Imperial Highway
Suite 130
Brea , CA  92821

*8070-006-003*

03/30/07

20070749515

[Space Above This Line For Recording Data]

# DEED OF TRUST

MIN   100011520042082430

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in
Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are
also provided in Section 16.

(A) "Security Instrument" means this document, which is dated March 27, 2007
together with all Riders to this document.

(B) "Borrower" is Valentin Espinoza and Edith Espinoza, Husband and Wife as Community Property

Borrower's address is 9835 Imperial Hwy #20, Downey, CA  90242
Borrower is the trustor under this Security Instrument

(C) "Lender" is CitiMortgage, Inc.

Lender is a Corporation
organized and existing under the laws of New York

002004208243
CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS          Form 3005  1/01

VMP® -6A(CA) (0207) 01

Page 1 of 15                    Initials

VMP Mortgage Forms, Inc

CitiMortgage 3 2.8 13 V2

Lender's address is 1000 Technology Drive, O' Fallon, MO  63368-2240

(D) "Trustee" is Verdugo Trustee Service Corporation

(E) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the beneficiary under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

(F) "Note" means the promissory note signed by Borrower and dated March 27, 2007
The Note states that Borrower owes Lender Three Hundred Forty Eight Thousand
                                                                                      Dollars
(U.S $ 348,000.00         ) plus interest  Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than 04/01/2037

(G) "Property" means the property that is described below under the heading "Transfer of Rights in the Property "

(H) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest

(I) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| [X] Adjustable Rate Rider | [ ] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [ ] Planned Unit Development Rider | [ ] 1-4 Family Rider |
| [ ] VA Rider | [ ] Biweekly Payment Rider | [X] Other(s) [specify] Assumption 1 do |
| | | Other(s): |

(J) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(K) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(L) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers

(M) "Escrow Items" means those items that are described in Section 3

(N) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property, (ii) condemnation or other taking of all or any part of the Property, (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(O) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan

(P) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

002004208243
[VMP] -6A(CA) (0207) 01              Page 2 of 15       Initials: [signature]       Form 3005  1/01
                                                                                  CitiMortgage 3 2 8 13 V2

07 0749515 51

(Q) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA

(R) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the County of Los Angeles

[Type of Recording Jurisdiction]                                    [Name of Recording Jurisdiction]

See Schedule "A" Attached Hereto and Made Apart Hereof

Assessor's Parcel No: 8070-006-003

Parcel ID Number·                                      which currently has the address of

14534 Painter Avenue                                                              [Street]

Norwalk                                        [City], California 90650-5157    [Zip Code]

("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances

002004208243

VMP®-6A(CA) (0207) 01                        Page 3 of 15          Initials _____          Form 3005  1/01
                                                                                                CitiMortgage 3 2 8 13 V2

of record  Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows·

1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note  Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender  (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15  Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current  Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note, (c) amounts due under Section 3  Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due  Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item  Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items  Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time  Any such waiver may only be

002004208243

VMP -6A(CA) (0207) 01

Page 4 of 15

Initials: _____

Form 3005   1/01

CitiMortgage 3 2 8 13 V2

in writing  In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount  Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA  Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge  Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds  Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA  If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly  payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender

4. Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower· (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded: or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the

002004208243

-8A(CA) (0207) 01

Page 5 of 15

Initials: _____

Form 3005   1/01
CitiMortgage 3 2 8 13 V2

07 07 49515

lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument  These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower  Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with

002004208243

VMP®-6A(CA) (0207).01

Page 6 of 15

Initials: *VZ OOO* .

Form 3005  1/01
CitiMortgage 3 2 8 13 V2

07 0749515

the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property  Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed  If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court, and (c) paying reasonable

002004208243                                                      Initials: _Ve OOO_ .
-6A(CA) (0207) 01                    Page 7 of 15                        Form 3005  1/01
                                                                         CitiMortgage 3 2 8 13 V2

attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance " Further:

(a) **Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

002004208243

VMP-6A(CA) (0207) 01

Page 8 of 15

Initials: _JE DDQp_ .

Form 3005  1/01
CitiMortgage 3 2 8 13 V2

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender

002004208243
-6A(CA) (0207) 01

Page 9 of 15

Initials:

Form 3005  1/01
CitiMortgage 3 2 8 13 V2

07 0749515

to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy

13. Joint and Several Liability; Co-signers; Successors and Assigns Bound. Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"). (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

14. Loan Charges. Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note) Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge

15. Notices. All notices given by Borrower or Lender in connection with this Security Instrument must be in writing Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender Borrower shall promptly notify Lender of Borrower's change of address If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

002004208243

-6A(CA) (0207) 01

Page 10 of 15

Initials: _____

Form 3005   1/01

CitiMortgage 3 2 8 13 V2

*12*

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity, or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA

002004208243
-6A(CA) (0207).01                    Page 11 of 15          Initials ___          Form 3005  1/01
                                                                                  CitiMortgage 3 2 8 13 V2

*13*

requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. Hazardous Substances. As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances· gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law, and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

002004208243
VMP -6A(CA) (0207) 01                    Page 12 of 15          Initials _____          Form 3005   1/01
                                                                                          CitiMortgage 3 2 8 13 V2

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. Reconveyance. Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable

24. Substitute Trustee. Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

25. Statement of Obligation Fee. Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

002004208243

-6A(CA) (0207) 01          Page 13 of 15          Initials: ____          Form 3005   1/01
                                                                         CitiMortgage 3 2 8 13 V2

*15*

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this
Security Instrument and in any Rider executed by Borrower and recorded with it

Witnesses

_____ (Seal)
Valentin Espinoza                    -Borrower

_____ (Seal)
Edith Espinoza                       -Borrower
(Sign Original Only)

002004208243
VMP -6A(CA) (0207) 01        Page 14 of 15         Form 3005  1/01
                                                   CitiMortgage 3 2 8 13 V2

07 0749515

State of California
County of *LOS ANGELES*                           } ss.

On *MARCH 27, 2007*     before me, *TERESA BARBOZA, NOTARY PUBLIC*
                                                    personally appeared

*VALENTIN ESPINOZA AND EDITH ESPINOZA*

, ~~personally known to me~~
(or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) ~~is~~/are subscribed
to the within instrument and acknowledged to me that ~~he/she~~/they executed the same in ~~his/her~~/their
authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity
upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

_____ (Seal)

TERESA BARBOZA
Commission # 1679695
Notary Public - California
Los Angeles County
My Comm. Expires Aug 2, 2010

002004208243
-6A(CA) (0207) 01                    Page 15 of 15          Initials

Form 3005   1/01
CitiMortgage 3 2 8 J3 V2

07 0749515

Loan #: 002004208243

# ADJUSTABLE RATE ASSUMPTION RIDER

THIS ASSUMPTION RIDER is made this __27th_____ day of    March                 ,    2007      ,
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or
Security Deed (the "Security Instrument") of the same date given by the undersigned person whether
one or more, (the "Borrower") to secure Borrower's Note to CitiMortgage, Inc.,    1000   Technology
Drive, O' Fallon, MO  63368-2240
(the "Lender") of the same date and covering the property described in the Security Instrument and
located at:  14534 Painter Avenue, Norwalk, CA  90650-5157

(PROPERTY ADDRESS)

**ASSUMPTION COVENANTS.  In addition to the convenants and
agreements made in the Security Instrument, Borrower and Lender
further covenant and agree as follows:**

A.  **ASSUMPTION.**  Any person purchasing the Property from Borrower may assume full liability
to repay Borrower's Note to Lender under the terms and conditions set out in this Assumption
Rider.

B.  **AGREEMENT.**  Lender may require the Purchaser to sign an assumption agreement, in the form
required by Lender, which obligates the Purchaser to keep all the promises and agreements made
in the Note and Security Instrument.  Borrower will continue to be obligated under the Note and
Security Instrument unless Lender releases Borrower in writing.

C.  **APPLICABILITY.**  Lender is bound by these conditions and terms, as follows:
   1.  This Assumption Rider applies only to the first transfer of the Property by Borrower and not
       to a foreclosure sale;
   2.  Purchaser must be an individual, not a partnership, corporation or other entity;
   3.  Purchaser must meet Lender's credit underwriting standards for the type of loan being
       assumed as if Lender were making a new loan to Purchaser;
   4.  Purchaser shall assume only the balance due on the Note at the time of assumption for the
       term remaining on the Note;
   5.  If applicable, Borrower's private mortgage insurance coverage must be transferred to the
       Purchaser in writing, unless waived by Lender;
   6.  If Borrower's Note has a conversion feature and Borrower has exercised the right of
       conversion of this loan to a fixed rate loan from Lender, this Assumption Rider is void and
       Lender has no obligation to allow assumption by a Purchaser from Borrower; and
   7.  Lender must reasonably determine that Lender's security will not be impaired by the loan
       assumption.

07 0749515

MB-1908  Rev  3/99    Page 1 of 2                                        CitiMortgage 3 2 8 13 V2

Loan #: 002004208243

**D.   ASSUMPTION RATE.**   Lender will allow assumption by Purchaser at Borrower's Note interest rate in effect at the time of assumption.

**E.   ADDITIONAL CHARGES.**   In addition, Lender may charge an amount up to one percent (1%) of the current Note balance and its normal loan closing costs, except the cost of a real estate appraisal.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants of this Assumption Rider.

_____   (Seal)
Valentin Espinoza                  ·Borrower

_____   (Seal)
Edith Espinoza                     ·Borrower

MB-1908  Rev  3/99    Page 2 of 2

CitiMortgage 3 2 8 13 V2

07 07495 15

# ADJUSTABLE RATE RIDER

(LIBOR One-Year Index (As Published In *The Wall Street Journal*) - Rate Caps
- Ten -Year Interest Only Period)

THIS ADJUSTABLE RATE RIDER is made this Twenty-Seventh day of      March, 2007      ,
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed
of Trust, or Security Deed (the "Security Instrument") of the same date given by the
undersigned (the "Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to
CitiMortgage, Inc.

(the "Lender") of the same date and covering the property described in the Security
Instrument and located at

    14534 Painter Avenue
    Norwalk, CA  90650-5157
        [Property Address]

THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE
INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE
AMOUNT THE BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE
TIME AND THE MAXIMUM RATE THE BORROWER MUST PAY.

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the
Security Instrument, Borrower and Lender further covenant and agree as follows

## A. INTEREST RATE AND MONTHLY PAYMENT CHANGES
The Note provides for an initial interest rate of      5.000     %. The Note provides
for changes in the interest rate and the monthly payments as follows·

### 4. ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES
(A) Change Dates
The initial fixed interest rate I will pay will change to an adjustable interest rate on the
first day of April, 2008        , and the adjustable interest rate I will pay may change on
that day every 12th month thereafter. The date on which my initial fixed interest rate changes
to an adjustable interest rate, and each date on which my adjustable interest rate could
change, is called a "Change Date."

MULTISTATE ADJUSTABLE RATE RIDER - WSJ One-Year LIBOR - Ten-Year Interest Only
Period - Single Family - Fannie Mae UNIFORM INSTRUMENT
002004208243
VMP-198R (0603)  Form 3155 2/06
Page 1 of 4        Initials·
VMP Mortgage Solutions, Inc

CitiMortgage 3 2 8 13 V2

**(B) The Index**
Beginning with the first Change Date, my adjustable interest rate will be based on an Index. The "Index" is the average of interbank offered rates for one-year U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in The Wall Street Journal. The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**
Before each Change Date, the Note Holder will calculate my new interest rate by adding **Two & 25/100**                                                                      percentage points ( 2.250 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date

The Note Holder will then determine the amount of my monthly payment. For payment adjustments occurring before the First Principal and Interest Payment Due Date, the amount of my monthly payment will be sufficient to repay all accrued interest each month on the unpaid principal balance at the new interest rate. If I make a voluntary payment of principal before the First Principal and Interest Payment Due Date, my payment amount for subsequent payments will be reduced to the amount necessary to repay all accrued interest on the reduced principal balance at the current interest rate. For payment adjustments occurring on or after the First Principal and Interest Payment Due Date, the amount of my monthly payment will be sufficient to repay unpaid principal and interest that I am expected to owe in full on the Maturity Date at the current interest rate in substantially equal payments.

**(D) Limits on Interest Rate Changes**
The interest rate I am required to pay at the first Change Date will not be greater than 7.000 % or less than                                                  3.000 %. Thereafter, my adjustable interest rate will never be increased or decreased on any single Change Date by more than two percentage points from the rate of interest I have been paying for the preceding 12 months. My interest rate will never be greater than                                    11.000 %

**(E) Effective Date of Changes**
My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

002004208243
VMP-198R (0603)                    Page 2 of 4                    Initials: _____ .
                                                                         Form 3155 2/06
                                                                         CitiMortgage 3 2 8 13 V2

07 0749515

21

**(F) Notice of Changes**

Before the effective date of any change in my interest rate and/or monthly payment, the Note Holder will deliver or mail to me a notice of such change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice

**(G) Date of First Principal and Interest Payment**

The date of my first payment consisting of both principal and interest on this Note (the "First Principal and Interest Payment Due Date") shall be that date which is the 10th anniversary date of the first payment due date, as reflected in Section 3(A) of the Note.

## B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER

Section 18 of the Security Instrument is amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

002004208243

VMP-198R (0603)                    Page 3 of 4                    Initials: _____

Form 3155 2/06

CitiMortgage 3 2 8 13 V2

22

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained
in this Adjustable Rate Rider.

_____ (Seal)
Valentin Espinoza                        -Borrower

_____ (Seal)
Edith Espinoza                              -Borrower

002004208243
VMP-198R (0603)              Page 4 of 4                    Form 3155 2/06
                                                            CitiMortgage 3 2 8 13 V2

07 0749515

File No: 02397495

SCHEDULE "A"

# EXHIBIT "A"

All that certain real property situated in the County of Los Angeles, State of California, described as follows:

Lot 50 of Tract No. 15584, in the City of Norwalk, County of Los Angeles, State of California, as per map recorded in Book 354 Page(s) 21 to 23 inclusive of Maps, in the Office of the County Recorder of said County.

EXCEPT therefrom all oil, gas, minerals, and other hydrocarbon substances lying below the surface of said land, but with no right of surface entry, as provided in deeds of record.

Assessor's Parcel Number:      **8070-006-003**

Order: Non-Order Search  Doc: CALOSA:2007 00749515      Page 23 of 23      Created By: gilbertporras  Printed: 12/4/2014 1:31:02 PM PST

RECORDER MEMO: This COPY is NOT an OFFICIAL RECORD.




**This page is part of your document - DO NOT DISCARD**



# 20141179008



**Pages: 0002**

**Recorded/Filed in Official Records**
**Recorder's Office, Los Angeles County,**
**California**

**11/06/14 AT 08:08AM**

| | |
|---|---|
| FEES: | 18.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 18.00 |



**L E A D S H E E T**



201411062830030

00009815831



006483454

**SEQ:**
**01**

**DAR - Mail (Hard Copy)**



**THIS FORM IS NOT TO BE DUPLICATED**

RECORDER MEMO: This COPY is NOT an OFFICIAL RECORD.

[RECORDING REQUESTED BY]
NATIONWIDE TITLE CLEARING, INC.

[AND WHEN RECORDED MAIL TO]
Citigroup Global Markets Realty Corp.
C/O Nationwide Title Clearing, Inc.
2100 Alt. 19 North
Palm Harbor, FL 34683

Loan # 225483487A
Servicer Loan # 46892



11/06/2014

*20141179008*

## CORPORATE ASSIGNMENT OF DEED OF TRUST

Contact Fay Servicing for this instrument 939 W. North Ave. Suite 625, Chicago, IL 60642 , telephone # 312-780-1971, which is responsible for receiving payments.

FOR GOOD AND VALUABLE CONSIDERATION, the sufficiency of which is hereby acknowledged, the undersigned, CITIBANK, N.A. AS TRUSTEE FOR CMLTI ASSET TRUST, WHOSE ADDRESS IS 388 GREENWICH STREET, 14TH FLOOR, NEW YORK, NY, 10013, (ASSIGNOR), by these presents does convey, grant, assign, transfer and set over the described Deed of Trust, without recourse, representation or warranty, together with all rights, title and interest secured thereby, all liens, and any rights due or to become due thereon to NRZ PASS-THROUGH TRUST V, U.S. BANK NATIONAL ASSOCIATION NOT IN ITS INDIVIDUAL CAPACITY BUT SOLELY AS PASS-THROUGH TRUST TRUSTEE, WHOSE ADDRESS IS 60 LIVINGSTON AVENUE MAILCODE: EP-MN-WS3D, ST. PAUL, MN 55107, ITS SUCCESSORS AND ASSIGNS, (ASSIGNEE).

Said Deed of Trust made by VALENTIN ESPINOZA AND EDITH ESPINOZA and recorded on 03/30/2007 as Instrument # 20070749515 in the office of the LOS ANGELES County Recorder, CA.

Dated on 10 / 13 /20 14 (MM/DD/YYYY)
CITIBANK, N.A. AS TRUSTEE FOR CMLTI ASSET TRUST, by NATIONWIDE TITLE CLEARING, INC, its Attorney-in-Fact

By: _____
Nadine Homan
VICE PRESIDENT

All persons whose signatures appear above have qualified authority to sign and have reviewed this document and supporting documentation prior to signing.

## ACKNOWLEDGEMENT

STATE OF FLORIDA
COUNTY OF PINELLAS
The foregoing instrument was acknowledged before me on 10 / 13 /20 14 (MM/DD/YYYY), by Nadine Homan as VICE PRESIDENT of NATIONWIDE TITLE CLEARING, INC as Attorney-in-Fact for CITIBANK, N.A. AS TRUSTEE FOR CMLTI ASSET TRUST, who, as such VICE PRESIDENT being authorized to do so, executed the foregoing instrument for the purposes therein contained. He/she/they is (are) personally known to me.

Nicole Baldwin EE 222285
Notary Public \ State of FLORIDA
Commission expires: 08/05/2016

Nicole Baldwin
Notary Public State of Florida
My Commission # EE 222285
Expires August 5, 2016

Document Prepared By: E.Lance/NTC, 2100 Alt. 19 North, Palm Harbor, FL 34683 (800)346-9152
CGMMA 24472577 -- CGMRC 2014-001C1    DOCR T1314104911   [C-1] FRMCA1

*D0007915707*

RECORDER MEMO: This COPY is NOT an OFFICIAL RECORD.

**EXHIBIT "5"**

LAWYERS TITLE

This document was prepared by **KIM FARINACCI National City Bank**

,6750 Miller Road Brecksville, OH 44141

Please return this document after recording to:

NCB, CLS BRECKSVILLE
DOCUMENTATION, LOCATOR 7120
6750 MILLER ROAD
BRECKSVILLE, OH 44141

03/30/07



**20070749516**

——————— Space Above This Line For Recording Data ———————

## DEED OF TRUST
(With Future Advance Clause)

1. **DATE AND PARTIES.** The date of this Deed of Trust (Security Instrument) is **March 28, 2007**

   The parties and their addresses are:

   TRUSTOR: **VALENTIN ESPINOZA and**
   **EDITH ESPINOZA Husband and Wife as Community**

   **9835 IMPERIAL HWY APT 20 DOWNEY, California 90242**

   ☐ If checked, refer to the attached Addendum incorporated herein, for additional Trustors, their signatures and acknowledgments.

   TRUSTEE: **National City Bank**

   ESPINOZA
   MORTGAGEDEED

   LENDER: **NATIONAL CITY BANK**

   XSLCR36

   This Deed of trust
   is Second & Subject to
   a first Deed of trust
   Recording Concurrently
   herewith.

2. **CONVEYANCE.** For good and valuable consideration, the receipt and sufficiency of which is acknowledged, and to secure the Secured Debt (defined below) and Trustor's performance under this Security Instrument, Trustor irrevocably grants, conveys and sells to Trustee, in trust for the benefit of Lender, with power of sale, the following described property:
   **SEE ATTACHED EXHIBIT** SEE EXHIBIT "A" ATTACHED

   The property is located in **Los Angeles** at ........................................
   (County)

   **14534 PAINTER AVE** , **NORWALK** , California **90650**
   (Address)                           (City)                                        (ZIP Code)

   Together with all rights, easements, appurtenances, royalties, mineral rights, oil and gas rights, all water and riparian rights, ditches, and water stock and all existing and future improvements, structures, fixtures, and replacements that may now, or at any time in the future, be part of the real estate described above (all referred to as "Property").

3. **MAXIMUM OBLIGATION LIMIT.** The total principal amount secured by this Security Instrument at any one time shall not exceed $ **87,000.00** . This limitation of amount does not include interest and other fees and charges validly made pursuant to this Security Instrument. Also, this limitation does not apply to advances made under the terms of this Security Instrument to protect Lender's security and to perform any of the covenants contained in this Security Instrument.

4. **SECURED DEBT AND FUTURE ADVANCES.** The term "Secured Debt" is defined as follows:
   A. Debt incurred under the terms of all promissory note(s), contract(s), guaranty(ies) or other evidence of debt described below and all their extensions, renewals, modifications or substitutions. *(Include items such as borrowers' names, note or contract amounts, interest rates (whether variable), maturity dates, etc.)*

   **Maturity Date: 3/28/2022**

(page 1 of 6)

**CALIFORNIA - DEED OF TRUST** (NOT FOR FNMA, FHLMC, FHA OR VA USE)
© 1994 Wolters Kluwer Financial Services - Bankers Systems, Inc., Form RE-DT-CA 2/9/2006
VMP®-C165(CA) (0606)

THIS DOCUMENT FILED FOR RECORD
BY L.T.C. AS AN ACCOMMODATION ONLY,
IT HAS NOT BEEN EXAMINED AS TO ITS
EFFECT UPON TITLE.

B. All future advances from Lender to Trustor or other future obligations of Trustor to Lender under any promissory note, contract or guaranty, or other evidence of debt executed by Trustor in favor of Lender after this Security Instrument if this Security Instrument is specifically referenced on the evidence of other debt. If more than one person signs this Security Instrument, each Trustor agrees that this Security Instrument will secure all future advances and future obligations that are given to or incurred by any one or more Trustor, or any one or more Trustor and others. All future advances and other future obligations are secured by this Security Instrument even though all or part may not yet be advanced. All future advances and other future obligations are secured as if made on the date of this Security Instrument. Nothing in this Security Instrument shall constitute a commitment to make additional or future loans or advances in any amount. Any such commitment must be agreed to in a separate writing.

C. All additional sums advanced and expenses incurred by Lender for insuring, preserving or otherwise protecting the Property and its value and any other sums advanced and expenses incurred by Lender under the terms of this Security Instrument.

D. Performance of every obligation in this Security Instrument (including any subsequent instrument amending this Security Instrument) and any instrument now or later evidencing or securing any indebtedness secured by this Security Instrument.

This Security Instrument will not secure any other debt if Lender fails to give any required notice of the right of rescission.

5. **PAYMENTS.** Trustor agrees that all payments under the Secured Debt will be paid when due and in accordance with the terms of the Secured Debt and this Security Instrument.

6. **WARRANTY OF TITLE.** Trustor warrants that Trustor is or will be lawfully seized of the estate conveyed by this Security Instrument and has the right to irrevocably grant, convey and sell the Property to Trustee, in trust, with power of sale. Trustor also warrants that the Property is unencumbered, except for encumbrances of record.

7. **PRIOR SECURITY INTERESTS.** With regard to any other mortgage, deed of trust, security agreement or other lien document that created a prior security interest or encumbrance on the Property, Trustor agrees:
   A. To make all payments when due and to perform or comply with all covenants.

   B. To promptly deliver to Lender any notices that Trustor receives from the holder.

   C. Not to allow any modification or extension of, nor to request any future advances under any note or agreement secured by the lien document without Lender's prior written consent.

8. **CLAIMS AGAINST TITLE.** Trustor will pay all taxes, assessments, liens, encumbrances, lease payments, ground rents, utilities, and other charges relating to the Property when due. Lender may require Trustor to provide to Lender copies of all notices that such amounts are due and the receipts evidencing Trustor's payment. Trustor will defend title to the Property against any claims that would impair the lien of this Security Instrument. Trustor agrees to assign to Lender, as requested by Lender, any rights, claims or defenses Trustor may have against parties who supply labor or materials to maintain or improve the Property.

9. **DUE ON SALE OR ENCUMBRANCE.** Lender may, at its option, declare the entire balance of the Secured Debt to be immediately due and payable upon the creation of, or contract for the creation of, any lien, encumbrance, transfer or sale of all or any part of the Property. This right is subject to the restrictions imposed by federal law (12 C.F.R. 591), as applicable. This covenant shall run with the Property and shall remain in effect until the Secured Debt is paid in full and this Security Instrument is released.

10. **PROPERTY CONDITION, ALTERATIONS AND INSPECTION.** Trustor will keep the Property in good condition and make all repairs that are reasonably necessary. Trustor shall not commit or allow any waste, impairment, or deterioration of the Property. Trustor will keep the Property free of noxious weeds and grasses. Trustor agrees that the nature of the occupancy and use will not substantially change without Lender's prior written consent. Trustor will not permit any change in any license, restrictive covenant or easement without Lender's prior written consent. Trustor will notify Lender of all demands, proceedings, claims, and actions against Trustor, and of any loss or damage to the Property.

Lender or Lender's agents may, at Lender's option, enter the Property at any reasonable time for the purpose of inspecting the Property. Lender shall give Trustor notice at the time of or before an inspection specifying a reasonable purpose for the inspection. Any inspection of the Property shall be entirely for Lender's benefit and Trustor will in no way rely on Lender's inspection.

11. **AUTHORITY TO PERFORM.** If Trustor fails to perform any duty or any of the covenants contained in this Security Instrument, Lender may, without notice, perform or cause them to be performed. Trustor appoints Lender as attorney in fact to sign Trustor's name or pay any amount necessary for performance. Lender's right to perform for Trustor shall not create an obligation to perform, and Lender's failure to perform will not preclude Lender from exercising any of Lender's

© 1994 Wolters Kluwer Financial Services - Bankers Systems, Inc., Form RE-DT-CA 2/9/2006
VMP®-C165(CA) (0605)

other rights under the law or this Security Instrument. If any construction on the Property is discontinued or not carried on in a reasonable manner, Lender may take all steps necessary to protect Lender's security interest in the Property, including completion of the construction.

12. **ASSIGNMENT OF LEASES AND RENTS.** Trustor irrevocably assigns, grants, and conveys, to Trustee, in trust for the benefit of Lender as additional security all the right, title and interest in the following (all referred to as Property): existing or future leases, subleases, licenses, guaranties and any other written or verbal agreements for the use and occupancy of the Property, including any extensions, renewals, modifications or replacements (all referred to as Leases); and rents, issues and profits (all referred to as Rents). In the event any item listed as Leases or Rents is determined to be personal property, this Assignment will also be regarded as a security agreement. Trustor will promptly provide Lender with copies of the Leases and will certify these Leases are true and correct copies. The existing Leases will be provided on execution of the Assignment, and all future Leases and any other information with respect to these Leases will be provided immediately after they are executed. Trustor may collect, receive, enjoy and use the Rents so long as Trustor is not in default.

Upon default, Trustor will receive any Rents in trust for Lender and will not commingle the Rents with any other funds. Trustor agrees that this Security Instrument is immediately effective between Trustor and Lender and effective as to third parties on the recording of this Assignment. This Security Instrument will remain effective during any statutory redemption period until the Secured Debts are satisfied. As long as this Assignment is in effect, Trustor warrants and represents that no default exists under the Leases, and the parties subject to the Leases have not violated any applicable law on leases, licenses and landlords and tenants.

13. **LEASEHOLDS; CONDOMINIUMS; PLANNED UNIT DEVELOPMENTS.** Trustor agrees to comply with the provisions of any lease if this Security Instrument is on a leasehold. If the Property includes a unit in a condominium or a planned unit development, Trustor will perform all of Trustor's duties under the covenants, by-laws, or regulations of the condominium or planned unit development.

14. **DEFAULT.** Trustor will be in default if any party obligated on the Secured Debt fails to make payment when due. Trustor will be in default if a breach occurs under the terms of this Security Instrument or any other document executed for the purpose of creating, securing or guarantying the Secured Debt. A good faith belief by Lender that Lender at any time is insecure with respect to any person or entity obligated on the Secured Debt or that the prospect of any payment or the value of the Property is impaired shall also constitute an event of default.

15. **REMEDIES ON DEFAULT.** In some instances, federal and state law will require Lender to provide Trustor with notice of the right to cure, or other notices and may establish time schedules for foreclosure actions. Subject to these limitations, if any, Lender may accelerate the Secured Debt and foreclose this Security Instrument in a manner provided by law if Trustor is in default.

At the option of Lender, all or any part of the agreed fees and charges, accrued interest and principal shall become immediately due and payable, after giving notice if required by law, upon the occurrence of a default or anytime thereafter. In addition, Lender shall be entitled to all the remedies provided by law, the terms of the Secured Debt, this Security Instrument and any related documents, including without limitation, the power to sell the Property.

If Lender elects to foreclose by exercise of the power of sale, Lender will declare the entire Secured Debts due and payable by delivering to Trustee in this Security Instrument and any evidence of the Secured Debts, receipts and evidence of expenditures made and secured, as Trustee requires. When the legally prescribed time passes after Trustee or Lender duly records a notice of default, the Trustee, Lender or other person authorized to take the sale will give a notice of sale as required by law and will cause the Property to be sold at the time and place fixed in the notice of sale. Lender may rescind any notice of default at any time before the Property's sale. Rescission will occur when Lender executes and records a notice of rescission that cancels any prior notice of default and any related acceleration of the Secured Debts. Lender's rescission will not waive any default then existing or subsequently occurring or preclude Lender exercising its remedies, including the power of sale, at another time.

The Property can be sold as a whole or in separate parcels and in any order that Trustee decides. The Property will be sold to the highest bidder for cash in lawful money of the United States, payable at sale time. The Property can be sold to anyone, including Trustor, Trustee or Lender. Trustee may postpone the sale of any part of the Property by public announcement at the time and place of this sale and afterwards at the time fixed by the preceding postponement. Upon any sale of the Property, Trustee will make and deliver a special or limited warranty deed that conveys the property sold to the purchaser or purchasers. Under this special or limited warranty deed, Trustee will covenant that Trustee has not caused or allowed a lien or an encumbrance to burden the Property and that Trustee will specially warrant and defend the Property's title to the purchaser or purchasers at the sale against all lawful claims and demand of all persons claiming by, through or under Trustee. The deed's recital of facts will be conclusive proof of the truthfulness of these facts.

© 1994 Wolters Kluwer Financial Services - Bankers Systems, Inc., Form RE-DT-CA 2/9/2006

VMP®-C165(CA) (0605)

*(page 3 of 6)*

The proceeds from the Property's sale will be applied to the sale expenses, Trustee's expenses, Lender's attorneys' fees due on Trustor's default, sums that Trustee or Lender paid for procuring a title search of the Property's title subsequent to the execution of this Security Instrument, all outstanding amounts due under this Security Instrument and the remainder to anyone legally entitled to the remaining amounts due.

All remedies are distinct, cumulative and not exclusive, and the Lender is entitled to all remedies provided at law or equity, whether or not expressly set forth. The acceptance by Lender of any sum in payment or partial payment on the Secured Debt after the balance is due or is accelerated or after foreclosure proceedings are filed shall not constitute a waiver of Lender's right to require complete cure of any existing default. By not exercising any remedy on Trustor's default, Lender does not waive Lender's right to later consider the event a default if it continues or happens again.

**16. EXPENSES; ADVANCES ON COVENANTS; ATTORNEYS' FEES; COLLECTION COSTS.** Except when prohibited by law, Trustor agrees to pay all of Lender's expenses if Trustor breaches any covenant (including, but not limited to, advances and expenses as described in the AUTHORITY TO PERFORM and INSURANCE sections) in this Security Instrument. Trustor will also pay on demand any amount incurred by Lender for insuring, inspecting, preserving or otherwise protecting the Property and Lender's security interest. These expenses will bear interest from the date of the payment until paid in full at the highest interest rate in effect as provided in the terms of the Secured Debt. Trustor agrees to pay all costs and expenses incurred by Lender in collecting, enforcing or protecting Lender's rights and remedies under this Security Instrument. This amount may include, but is not limited to, attorneys' fees, court costs, and other legal expenses. This Security Instrument shall remain in effect until released. Trustor agrees to pay for any recordation costs of such release.

**17. ENVIRONMENTAL LAWS AND HAZARDOUS SUBSTANCES.** As used in this section, (1) Environmental Law means, without limitation, the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA, 42 U.S.C. 9601 et seq.), and all other federal, state and local laws, regulations, ordinances, court orders, attorney general opinions or interpretive letters concerning the public health, safety, welfare, environment or a hazardous substance; and (2) Hazardous Substance means any toxic, radioactive or hazardous material, waste, pollutant or contaminant which has characteristics which render the substance dangerous or potentially dangerous to the public health, safety, welfare or environment. The term includes, without limitation, any substances defined as "hazardous material," "toxic substances," "hazardous waste" or "hazardous substance" under any Environmental Law.

Trustor represents, warrants and agrees that:

A. Except as previously disclosed and acknowledged in writing to Lender, no Hazardous Substance is or will be located, stored or released on or in the Property. This restriction does not apply to small quantities of Hazardous Substances that are generally recognized to be appropriate for the normal use and maintenance of the Property.

B. Except as previously disclosed and acknowledged in writing to Lender, Trustor and every tenant have been, are, and shall remain in full compliance with any applicable Environmental Law.

C. Trustor shall immediately notify Lender if a release or threatened release of a Hazardous Substance occurs on, under or about the Property or there is a violation of any Environmental Law concerning the Property. In such an event, Trustor shall take all necessary remedial action in accordance with any Environmental Law.

D. Trustor shall immediately notify Lender in writing as soon as Trustor has reason to believe there is any pending or threatened investigation, claim, or proceeding relating to the release or threatened release of any Hazardous Substance or the violation of any Environmental Law.

**18. CONDEMNATION.** Trustor will give Lender prompt notice of any pending or threatened action, by private or public entities to purchase or take any or all of the Property through condemnation, eminent domain, or any other means. Trustor authorizes Lender to intervene in Trustor's name in any of the above described actions or claims. Trustor assigns to Lender the proceeds of any award or claim for damages connected with a condemnation or other taking of all or any part of the Property. Such proceeds shall be considered payments and will be applied as provided in this Security Instrument. This assignment of proceeds is subject to the terms of any prior mortgage, deed of trust, security agreement or other lien document.

**19. INSURANCE.** Trustor shall keep Property insured against loss by fire, flood, theft and other hazards and risks reasonably associated with the Property due to its type and location. This insurance shall be maintained in the amounts and for the periods that Lender requires. What Lender requires pursuant to the preceding two sentences can change during the term of the Secured Debt. The insurance carrier providing the insurance shall be chosen by Trustor subject to Lender's approval, which shall not be unreasonably withheld. If Trustor fails to maintain the coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property according to the terms of this Security Instrument

All insurance policies and renewals shall be acceptable to Lender and shall include a standard "mortgage clause" and, where applicable, "loss payee clause." Trustor shall immediately notify Lender of cancellation or termination of the insurance. Lender shall have the right to hold the policies and renewals. If Lender requires, Trustor shall immediately give to Lender all receipts of paid premiums and renewal notices. Upon loss, Trustor shall give immediate notice to the insurance carrier and Lender. Lender may make proof of loss if not made immediately by Trustor.

Unless otherwise agreed in writing, all insurance proceeds shall be applied to the restoration or repair of the Property or to the Secured Debt, whether or not then due, at Lender's option. Any application of proceeds to principal shall not extend or postpone the due date of the scheduled payment nor change the amount of any payment. Any excess will be paid to the Trustor. If the Property is acquired by Lender, Trustor's right to any insurance policies and proceeds resulting from damage to the Property before the acquisition shall pass to Lender to the extent of the Secured Debt immediately before the acquisition.

**20. ESCROW FOR TAXES AND INSURANCE.** Unless otherwise provided in a separate agreement, Trustor will not be required to pay to Lender funds for taxes and insurance in escrow.

**21. FINANCIAL REPORTS AND ADDITIONAL DOCUMENTS.** Trustor will provide to Lender upon request, any financial statement or information Lender may deem reasonably necessary. Trustor agrees to sign, deliver, and file any additional documents or certifications that Lender may consider necessary to perfect, continue, and preserve Trustor's obligations under this Security Instrument and Lender's lien status on the Property.

**22. JOINT AND INDIVIDUAL LIABILITY; CO-SIGNERS; SUCCESSORS AND ASSIGNS BOUND.** All duties under this Security Instrument are joint and individual. If Trustor signs this Security Instrument but does not sign an evidence of debt, Trustor does so only to mortgage Trustor's interest in the Property to secure payment of the Secured Debt and Trustor does not agree to be personally liable on the Secured Debt. Trustor agrees that Lender and any party to this Security Instrument may extend, modify or make any change in the terms of this Security Instrument or any evidence of debt without Trustor's consent. Such a change will not release Trustor from the terms of this Security Instrument. The duties and benefits of this Security Instrument shall bind and benefit the successors and assigns of Trustor and Lender.

**23. APPLICABLE LAW; SEVERABILITY; INTERPRETATION.** This Security Instrument is governed by the laws of the jurisdiction in which Lender is located, except to the extent otherwise required by the laws of the jurisdiction where the Property is located. This Security Instrument is complete and fully integrated. This Security Instrument may not be amended or modified by oral agreement. Any section in this Security Instrument, attachments, or any agreement related to the Secured Debt that conflicts with applicable law will not be effective, unless that law expressly or impliedly permits the variations by written agreement. If any section of this Security Instrument cannot be enforced according to its terms, that section will be severed and will not affect the enforceability of the remainder of this Security Instrument. Whenever used, the singular shall include the plural and the plural the singular. The captions and headings of the sections of this Security Instrument are for convenience only and are not to be used to interpret or define the terms of this Security Instrument. Time is of the essence in this Security Instrument.

**24. SUCCESSOR TRUSTEE.** Lender, at Lender's option, may from time to time remove Trustee and appoint a successor trustee without any other formality than the designation in writing. The successor trustee, without conveyance of the Property, shall succeed to all the title, power and duties conferred upon Trustee by this Security Instrument and applicable law.

**25. NOTICE.** Unless otherwise required by law, any notice shall be given by delivering it or by mailing it by first class mail to the appropriate party's address on page 1 of this Security Instrument, or to any other address designated in writing. Notice to one trustor will be deemed to be notice to all trustors. Lender and Trustor request that copies of any notice of default or notice of sale under a superior instrument be sent to Lender and Trustor at the addresses listed in the DATE AND PARTIES section.

**26. WAIVERS.** Except to the extent prohibited by law, Trustor waives all appraisement or marshalling of assets relating to the Property.

**27. STATEMENT OF OBLIGATION.** Lender may collect a fee not to exceed the maximum allowed by applicable law for furnishing the statement of obligation as provided in Section 2943 of the Civil Code of California.

**28. SPOUSE'S SEPARATE PROPERTY.** Any Trustor who is a married person or registered domestic partner expressly agrees that recourse may be had against his or her separate property.

© 1994 Wolters Kluwer Financial Services - Bankers Systems, Inc., Form RE-DT-CA 2/9/2006
VMP®-C165(CA) (0605)

**29. OTHER TERMS.** If checked, the following are applicable to this Security Instrument:

☐ **Line of Credit.** The Secured Debt includes a revolving line of credit provision. Although the Secured Debt may be reduced to a zero balance, this Security Instrument will remain in effect until released.

☐ **Construction Loan.** This Security Instrument secures an obligation incurred for the construction of an improvement on the Property.

☐ **Fixture Filing.** Trustor grants to Lender a security interest in all goods that Trustor owns now or in the future and that are or will become fixtures related to the Property. This Security Instrument suffices as a financing statement and any carbon, photographic or other reproduction may be filed of record for purposes of Article 9 of the Uniform Commercial Code.

☐ **Riders.** The covenants and agreements of each of the riders checked below are incorporated into and supplement and amend the terms of this Security Instrument. [Check all applicable boxes]
    ☐ Condominium Rider   ☐ Planned Unit Development Rider   ☐ Other ............................................

☐ **Additional Terms.**

**SIGNATURES:** By signing below, Trustor agrees to the terms and covenants contained in this Security Instrument and in any attachments. Trustor also acknowledges receipt of a copy of this Security Instrument on the date stated on page 1.

........................................... 3/28/07     ........................................... 3/28/07
(Signature)                        (Date)     (Signature)                        (Date)
   **VALENTIN ESPINOZA**                               **EDITH ESPINOZA**

**ACKNOWLEDGMENT:**

(Individual) STATE OF *CALIFORNIA* , COUNTY OF *LOS ANGELES* } ss.
On this *28 TH* day of *MARCH 2007* before me *TERESA BARBOZA*
a notary public, personally appeared *VALENTIN ESPINOZA AND EDITH ESPINOZA*

~~personally known to me~~ (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) ~~is~~/are subscribed to the within instrument and acknowledged to me that ~~he/she~~/they executed the same in ~~his/her~~/their authorized capacity(ies), and that by ~~his/her~~/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.
WITNESS my hand and official seal.

**TERESA BARBOZA**
Commission # 1679695
Notary Public - California
Los Angeles County
My Comm. Expires Aug 2, 2010

Signature ........................................... *-TERESA BARBOZA*
                                Name (typed or printed)

My commission expires: *AUGUST 2, 2010*

---

### REQUEST FOR FULL RECONVEYANCE

To Trustee:

The undersigned is the holder of the note or notes secured by this Deed of Trust, which was recorded in the office of the Recorder of ........................... County, State of California, in book ..................., page .......... of official records. Said note or notes, together with all other indebtedness secured by this Deed of Trust, have been paid in full. You are hereby directed to cancel said note or notes and this Deed of Trust, which are delivered hereby, and to reconvey, without warranty, all the estate now held by you under this Deed of Trust to the person or persons legally entitled thereto.

Dated: ...........................    ...........................

Assessor's Identification Number ............... - ............... - ...............

© 1994 Wolters Kluwer Financial Services - Bankers Systems, Inc., Form RE-DT-CA 2/9/2006     *(page 6 of 6)*
VMP®-C165(CA) (0605)



**This page is part of your document - DO NOT DISCARD**



**20070749516** | Pages: 008

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**03/30/07 AT 08:00AM**

Fee.  43.00
Tax:  0.00
Other: 0.00
Total: 43.00

**TitleCompany**

# TITLE(S) :



L E A D    S H E E T

**Assessor's Identification Number (AIN)**
**To be completed by Examiner OR Title Company in black ink.**

**Number of AIN's Shown**

-          -

   E484772   **THIS FORM IS NOT TO BE DUPLICATED**   

National City®

# FIXED RATE CONSUMER NOTE AND SECURITY AGREEMENT – National Home Equity
### (Not to be Used for Texas Homestead Loans Unless Purchase Money or Refinance of Purchase Money)

**1. DEBTOR(S)**   VALENTIN ESPINOZA
EDITH ESPINOZA

Date _____3/28/2007_____

**Address**   14534 PAINTER AVE
NORWALK, California 90650

**2.   DEFINITIONS AND GENERAL TERMS.** "You" or "your" means the undersigned Debtors. "We", "our" or "us" means National City Bank, 6750 Miller Road, Brecksville, Ohio 44141, and its successors and assigns. "Note" means this promissory note and security agreement and all related attachments and addenda. "Loan" means the loan evidenced by this Note. Property means the real estate securing the payment of this Note described in Section 4. "Disclosure Statement" means the separate federal truth-in-lending disclosure statement of even date provided to you, the terms of which are incorporated by reference in this Note. Disclosures in the Disclosure Statement are contract terms. You agree that we are making this Loan directly to you. The Section headings of this Note are a table of contents and not contract terms.

**3   PROMISSORY NOTE.** For value received, you, intending to be legally bound, jointly and severally promise to pay to our order the principal sum of $_____87,000.00_____, which includes a prepaid finance charge of $___1633.00___, plus interest from the date of this Note on the principal sum outstanding and other sums owed under this Note at the per annum rate of ___8.375___%, payable as described in the payment schedule in the Disclosure Statement. You agree that all past due and unpaid charges owed, including past due interest, may be capitalized and earn interest by adding them to the principal balance of this Note. Interest will be computed on a simple interest basis based upon a 365-day year, but calculated on actual days. Accordingly, your payment history could affect the amount you will pay under this Note.

**4.   PROPERTY.** 14534 PAINTER AVE
NORWALK , California 90650

**5.   DISBURSEMENT OF PROCEEDS.** You authorize us to disburse all proceeds of this Loan by check, draft, electronic transfer or in such other form or manner as we choose in our sole discretion.

**6.   LATE CHARGE; RETURNED INSTRUMENT CHARGE; DEFFERAL CHARGE; DOCUMENT REQUEST CHARGE.** If all or any portion of any monthly payment is not received within 10 days after it is due and we do not accelerate the entire balance owing under this Note, you agree to pay a late charge. This late charge will be the greater of 10% of the unpaid monthly payment or $40. If any check, draft, negotiable order of withdrawal, or other similar instrument is returned to us unpaid for any reason, you agree to pay a returned instrument charge. This returned instrument charge will be $25. If we, in our sole discretion, permit you to defer any payment(s) you agree to pay a deferral charge for each payment deferred. If you request copies of any documents related to this Loan, you agree to pay a document request charge for the service of providing copies. This document request charge will be $6 per copy. We will not charge you for documents we are required to provide you by law.

**7.   INSURANCE.** You are required to insure the Property until this Loan is paid in full or we sell the Property. You have the risk of loss of the Property and will be responsible for its loss or damage. **You agree to obtain primary insurance coverage (including furnishing existing coverage) from any insurer you want that is acceptable to us, provided that the insurer is authorized to do business in the state or jurisdiction where the Property is located or is an eligible surplus lines carrier, in the following types and amounts with us listed as loss payee:** (a) fire, "all risk" perils and flood insurance required by law; and (b) all other insurance required by applicable law. You must keep the Property fully insured against loss or damage on terms which are acceptable to us to the extent permitted by law. All insurance proceeds we receive (including a refund of premium) may at our option reduce the indebtedness of this Note or be used to repair or replace the Property. If the Property is destroyed, you must still pay us whatever you owe under this Note. If you fail to maintain the required insurance, we may at our sole option obtain coverages at your expense which we believe are necessary to protect our interests in the Property. You agree to pay the expense of such insurance on demand or agree that we may add such expense to this Loan. You acknowledge that insurance we purchase may cost substantially more than insurance you could purchase. Failure of your insurer to pay a claim, or any part of a claim, will mean you do not have the insurance required by this Note. You also assign to us any other insurance proceeds related to the Note or our interest in the Property. You must promptly provide us with evidence of insurance and proof of payment of insurance premiums upon our request, and all policies must provide us with a minimum of 10 days prior notice of cancellation or material change in coverage. Our mailing address for purposes of this Section is P.O. Box 91596, Cleveland, OH 44101-0351 You irrevocably authorize us as your agent and on your behalf, which authorization will survive your incompetence, to negotiate, settle and release any claim under your insurance or under any insurance with a third party insurer related to the Property, and to receive and sign all related papers and documents on your behalf including, checks, drafts and other items payable to you

**8.   PREPAYMENT.** You may voluntarily prepay the principal sum of this Note in part at any time. If you voluntarily prepay the principal sum of this Note in full, you agree to pay a voluntary prepayment charge which will be equal to the greater of __0__ % of the principal balance at the time of prepayment or $___0.00___ You will only be charged this voluntary prepayment charge during the first __0__ months of this Note. If we accelerate the entire balance owing under this Note due to your default, you agree to pay an involuntary prepayment charge which will be equal to $150.00 No portion of the prepaid finance charge described in Section 3 will be refunded. Subject to Section 3, you authorize us to apply all prepaid sums to the indebtedness of this Note in any manner we elect.

**9.   SECURITY AGREEMENT.** To the extent permitted by law you grant us a security interest and waive all applicable property exemptions and homestead rights (unless the Property is located in Texas) in the following property to secure performance of your obligations under this Note and (except for the Property if it is a principal residence) your obligations under any other agreement with us or our affiliates: (a) the Property including all equipment, parts, accessories and personal property which is a fixture of the Property except "household goods" as defined by 12 C.F.R. 227 12(d) unless purchased with the proceeds of this Loan. If we have a prior lien on your principal residence as security for future obligations, we waive such security as to this Note only; (b) proceeds and unearned premiums of any Property insurance, (c) all of your deposit accounts with us or our affiliates (except individual retirement accounts); and (d) substitutions, replacements, products and proceeds of the foregoing. Our security interest will be a purchase money security interest if any of the foregoing are purchased with the proceeds of this Loan. You agree that we are not a fiduciary with respect to our security interest. You further agree that we may at any time apply proceeds and unearned premiums and refunds of any Property insurance to reduce the indebtedness of this Note, even if you are not in default. Upon our request, you will deliver any documents that are necessary for us to perfect our security interest. You will defend at your expense our security interest in the Property. To the extent permitted by law, you agree to pay all actual costs imposed to release our interests in the Property

**10.   PROPERTY MAINTENANCE AND USE.** You will promptly pay all fees, fines, and taxes related to this Loan and the Property. You will maintain the Property in good condition except for ordinary wear and tear, and keep it free from all liens, encumbrances, fines and adverse claims. You will make all needed repairs. You will not make any changes to the Property that will decrease its value or decrease its functionality without our prior written consent. You will permit us to inspect the Property at a time which is reasonably convenient. If you do not do any of the foregoing, we may do so at our sole option and add the costs to this Loan or require you to provide us with additional collateral. You will not use, or permit others to use, the Property (a) in violation of any law; (b) contrary to the provisions of any insurance policies covering the Property or in a manner that would invalidate any warranty or (c) for any business, commercial or agricultural purpose unless this Loan is explicitly for such a purpose

NHEFRN1 (07/03)



FRNOTE-MULTI-V1_1

**11.    DEFAULT AND REMEDIES.** You will be in default under this Note if (a) you fail to make any payment or pay other amount owing under this Note when due, (b) you fail to keep any of your agreements under this Note or under any other agreement with us or our affiliates; (c) a bankruptcy petition is filed by or against you, (d) you have provided false or misleading information to us; (e) you or are declared incompetent or incapacitated (f) the Property or any other property for which we or our affiliates possess a security interest is lost, stolen, destroyed, determined by us to be uninsurable for use, seized, impounded or threatened with, or subject to, levy, attachment, condemnation, forfeiture or other administrative or judicial proceedings, or (g) you are in default on any obligation that is secured by a lien on the Property. If you are in default, in addition to any other rights and remedies we have under law and subject to any right you may have to cure your default, we may do any of the following. (aa) accelerate the entire balance owing under this Note after any demand or notice which is required by law, which entire balance will be immediately due and payable. You will pay us interest on this balance at the rate set forth in this Note including after default and acceleration and after any judgment, (bb) demand that you vacate the Property and make it available to us at a time which is reasonably convenient. You agree to comply with such demand, (cc) sell, lease, or otherwise dispose of the Property. Our disposal of the Property will not release you from any of your obligations and you will pay us any balance owing under this Note; (dd) recover all expenses related to retaking, holding, preparing for sale and selling the Property and reasonable collection costs, attorneys' fees. (unless you are a resident of New Hampshire, in which case we may not recover our attorneys' fees from you) and legal expenses as permitted by 11 U.S.C. 506 and applicable state law; and/or (ee) setoff any of your deposit accounts with us or our affiliates (except individual retirement accounts) without demand or notice.

**12.    PROPERTY CONDITION** You agree that with respect to any Property (a) it is free from all material defects, in proper operating order and fit for all intended purposes, (b) that our making this Loan was based in part upon the value and condition of them as represented by you, (c) we did not directly or indirectly offer, sell or provide it to you, and (e) we are not a seller, supplier, merchant or warrantor Accordingly, **except for specific rights afforded by state law, any claims relating to the Property, including any defect or warranty related to it, are not our responsibility**

**13.    ADDITIONAL AGREEMENTS.** You agree that: (a) you may not sell or assign this Note, the Property or any of its benefits or obligations without our prior written consent. We own this Note and may assign this Note or any of its benefits or obligations at any time without your consent, (b) this Note is between you and us and except for successors or assigns as provided by this Note, this Note will not confer any rights upon any third party; (c) our rights and remedies in this Note are not exclusive; (d) we may waive or delay the enforcement of our rights under this Note without waiving or otherwise affecting such rights, (e) the provisions of this Note are only to the extent permitted by applicable law Any part of this Note which cannot be enforced will be void, but the remaining parts will remain in effect, (f) you waive notice of dishonor, protest, presentment, demand for payment (subject to any right you may have to cure your default), waiver, delay and all other notices or demands in connection with this Note; (g) you waive all defenses relating to impairment of recourse or collateral, and we can change any term of this Note, release any collateral or release any obligor by agreeing with any one party without notifying or releasing any other party, (h) we can correct errors in this Note as provided in 15 U.S.C 1640 upon notice to you even if they are contract terms and you agree to be bound by such corrections. Upon our request, you will promptly re-execute this Note to correct errors in the Note. You can change any term of this Note only in a writing signed by us, (i) the Bank is a national bank located in Ohio and Bank's decision to make this Loan to you was made in Ohio. Therefore, this Note shall be governed by and construed in accordance with (i) Federal laws and regulations including but not limited to 12 USC § 85 and (ii) the laws of Ohio, to the extent Ohio laws are not preempted by federal laws or regulations, and without regard to conflict of law principles, (j) this Note describes all agreements between you and us with respect to the Loan and there are no other agreements. An electronic or optically imaged reproduction of this Note or any other document related to your Loan constitutes an original document and may be relied on in full by all parties to the same extent as an original, (k) except as otherwise required by law, we are authorized to mail any notice or other correspondence to you by first class mail to your last known address indicated on our records; (l) you will provide us with 10 days prior written notice of any change in any information contained in your application including a change in your name or address Except as otherwise specified, all notices and payments to us must be sent to P.O Box 5700, Cleveland, OH 44101-0570, or such other place as we may designate. Our failure or delay in providing you billing statements or other payment instructions will not relieve you of your obligations under this Note, (m) all payments must be in lawful money of the United States, (n) if you are a natural person you are competent to enter into this Note and if you are other than a natural person, the person signing on behalf of you represents that they are authorized to enter into and execute this Note, (o) we will not be responsible for any personal items in or on vacated Property We will make a reasonable effort to return such items to you or have you reclaim them from us provided you notify us within 5 business days of our taking possession and itemize such items. Even if you notify us, you abandon to us any personal items not reclaimed from us within 10 business days of our taking repossession, (p) we may accept late payments or partial payments without losing any of our rights. **If your payment is marked with the words "Paid in Full" or similar language, you must send your payment to National City, 6750 Miller Road, Brecksville, Ohio 44141, Locator No. 7107.** If your payment is made to any other address, we may accept the payment without losing any of our rights, (q) our application of your payments or other proceeds will be deemed reasonable unless another method is required by law, in which case that method will be deemed reasonable, (r) this Note will be binding and inure to the benefit of you and us and our respective successors and assigns; (s) **except as otherwise prohibited by law, Bank may provide to others, including but not limited to, consumer credit reporting agencies, information about our transactions and experiences with you. Also, Bank and its affiliates (collectively "National City") may share with each other all information about you for the purposes, among other things, of evaluating credit applications or offering products and services that National City believes may be of interest to you. Under the Fair Credit Reporting Act there is certain credit information that cannot be shared about you (unless you are a business) if you tell National City by writing to National City Corporation, Attention: Office of Consumer Privacy, P.O. Box 4068, Kalamazoo, MI 49009. You must include your name, address, account number and social security number;** (t) the annual IRS Form 1098 will be issued only to the first borrower listed on this Note at origination and the designation of a borrower as first cannot be changed subsequently; (u) we are authorized to sign on your behalf any document required to enforce our interests under this Note, (v) disclosures included in this Note but not required by law are not an admission or waiver of rights by us, (w) all actions under this Note requiring our consent are at our sole discretion, and such consent may be withheld for any reason, (x) our typewritten name in Section 2 will constitute our signature for purposes of this Note, (y) we have an established business relationship with you, and unless otherwise prohibited by law, National City may contact you to offer you products and services that National City thinks may be of interest to you Such contacts are not unsolicited, and National City may contact you with an automated dialing and announcing device or by fax, email or other form of electronic communication and we may monitor telephone calls with you to assure quality service, (z) you will pay all fees we charge you in connection with this Loan including those indicated on any Good Faith Estimate or HUD1/HUD1A provided in connection with this Loan, which will be nonrefundable to the extent permitted by law; (aa) all amounts owed under this Note will be without relief from valuation and appraisement laws, (bb) if this Loan is not for a consumer purpose or you are not a natural person, you are not entitled to any rights afforded consumers under applicable law or regulations, and (cc) In this Note, the term "affiliates" means current and future affiliates of National City Bank, including, but not limited to, the following National City Corporation subsidiaries. National City Home Loan Services, Inc., First Franklin Financial Corporation, Madison Bank and Trust Company and National City Mortgage Co

**14.    ADDITIONAL NOTICES.** The following notices are given by Bank only to the extent not inconsistent with 12 U.S.C. Section 85 and related regulations and opinions, and/or the choice of law provision set forth herein (with respect to which Bank expressly reserves all rights). You acknowledge receipt of the following notices before becoming obligated. For purposes of the immediately following *Notice to Cosigner*, "bank" means us

NHEFRN2A (06/06)

FRNOTE-MULTI-V1_2

You are being asked to guarantee this debt. Think carefully before you do. If the borrower doesn't pay the debt, you will have to. Be sure you can afford to pay if you have to, and that you want to accept this responsibility. You may have to pay up to the full amount of the debt if the borrower does not pay. You may also have to pay late fees or collection costs, which increase this amount. The bank can collect this debt from you without first trying to collect from the borrower (and after proper notice to you if you are a "cosigner" as defined by Illinois or Michigan law). The bank can use the same collection methods against you that can be used against the borrower, such as suing you, garnishing your wages (unless you receive wages in North Carolina, Pennsylvania, South Carolina or Texas) etc. If this debt is ever in default, that fact may become a part of *your* credit record. This notice is not the contract that makes you liable for the debt.

## NOTICE TO ALL SIGNERS

**You are hereby notified that a negative credit report reflecting on your credit record may be submitted to a consumer (credit) reporting agency if you fail to fulfill the terms of your credit obligations. If you believe that we have information about you that is inaccurate or that we have reported or may report to a credit reporting agency information about you that is inaccurate, please notify us of the specific information that you believe is inaccurate by writing to National City, P.O. Box 94982, Cleveland, Ohio 44101, Attn: Credit Bureau Disputes, Locator 7113.**

**If the Property is located in California:** Lender may, at its option, declare the entire balance of the Secured Debt to be immediately due and payable upon the creation of, or contract for the creation of, any lien, encumbrance, transfer or sale of the Property

**If the Property is located in Colorado:** The dollar amount of the finance charge disclosed to you for this credit transaction is based upon your payments being received by us on the date payments are due. If your payments are received after the due date, even if received before the date a late fee applies, you may owe additional and substantial money at the end of the credit transaction and there may be little or no reduction of principal This is due to the accrual of daily interest until a payment is received

**If the Property is located in Florida:** Florida Documentary Stamp Tax in the amount required by law has been paid or will be paid directly to the Department of Revenue, and Florida Documentary Stamps have been placed on the taxable instruments as required by Chapter 201, Florida Statutes

**If the Property is located in Iowa (this is a consumer credit transaction) or Kansas:** NOTICE TO CONSUMER. 1 Do not sign this paper (agreement) before you read it. 2 You are entitled to a copy of this paper (agreement). 3 You may prepay the unpaid balance at any time and in accordance with law you will not be entitled to receive a refund of unearned charges 4 If you prepay the unpaid balance, you may have to pay a prepayment penalty

**If the Property is located in Iowa and the principal amount of this Loan exceeds $20,000: IMPORTANT: READ BEFORE SIGNING THE TERMS OF THIS AGREEMENT SHOULD BE READ CAREFULLY BECAUSE ONLY THOSE TERMS IN WRITING ARE ENFORCEABLE. NO OTHER TERMS OR ORAL PROMISES NOT CONTAINED IN THIS WRITTEN CONTRACT MAY BE LEGALLY ENFORCED YOU MAY CHANGE THE TERMS OF THIS AGREEMENT ONLY BY ANOTHER WRITTEN AGREEMENT.**

**If the Property is located in Maryland:** We elect Subtitle 10, Credit Grantor Closed End Credit Provisions, of Title 12 of the Commercial Law Article of the Annotated Code of Maryland

**If the Property is located in Minnesota:** If the amount of this Loan is $100,000 or more, we elect Minn. Stat. § 334.01

**If the Property is located in Missouri:** Oral agreements or commitments to loan money, extend credit or to forbear from enforcing repayment of a debt including promises to extend or renew such debt are not enforceable. To protect you (borrower(s)) and us (creditor) from misunderstanding or disappointment, any agreements we reach covering such matters are contained in this writing, which is the complete and exclusive statement of the agreement between us, except as we may later agree in writing to modify it.

**If the Property is located in New York: YOU SHOULD CHECK WITH YOUR LEGAL ADVISOR AND WITH OTHER MORTGAGE LIEN HOLDERS AS TO WHETHER ANY PRIOR LIENS CONTAIN ACCELERATION CLAUSES WHICH WOULD BE ACTIVATED BY A JUNIOR ENCUMBRANCE.**

**DEFAULT IN THE PAYMENT OF THIS LOAN AGREEMENT MAY RESULT IN THE LOSS OF THE PROPERTY SECURING THE LOAN. UNDER FEDERAL LAW, YOU MAY HAVE THE RIGHT TO CANCEL THIS AGREEMENT. IF YOU HAVE THIS RIGHT, THE CREDITOR IS REQUIRED TO PROVIDE YOU WITH A SEPARATE WRITTEN NOTICE SPECIFYING THE CIRCUMSTANCES AND TIMES UNDER WHICH YOU CAN EXERCISE THIS RIGHT.**

**If the Property is located in North Dakota: THIS OBLIGATION MAY BE THE BASIS FOR A PERSONAL ACTION AGAINST THE PROMISOR OR PROMISORS IN ADDITION TO OTHER REMEDIES ALLOWED BY LAW.**

**If the Property is located in Oregon: NOTICE TO THE BORROWER:** Do not sign this loan agreement before you read it. The loan agreement provides for the payment of a penalty if you wish to repay the loan prior to the date provided for repayment in the loan agreement.

**If the Property is located in Texas: THIS WRITTEN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.**

**If the Property is located in Vermont: NOTICE TO CO-SIGNER:** YOUR SIGNATURE ON THIS NOTE MEANS THAT YOU ARE EQUALLY LIABLE FOR REPAYMENT OF THIS LOAN. IF THE BORROWER DOES NOT PAY, THE LENDER HAS A LEGAL RIGHT TO COLLECT FROM YOU

**If the Property is located in Wisconsin: NOTICE TO CUSTOMER: (a)** DO NOT SIGN THIS BEFORE YOU READ THE WRITING ON THE REVERSE SIDE, EVEN IF OTHERWISE ADVISED. **(b)** DO NOT SIGN THIS IF IT CONTAINS ANY BLANK SPACES. **(c)** YOU ARE ENTITLED TO AN EXACT COPY OF ANY AGREEMENT YOU SIGN **(d)** YOU HAVE THE RIGHT AT ANY TIME TO PAY IN ADVANCE THE UNPAID BALANCE DUE UNDER THIS AGREEMENT AND YOU WILL NOT BE ENTITLED TO A PARTIAL REFUND OF THE FINANCE CHARGE

**15. SIGNATURES. YOU HAVE READ AND AGREE TO ALL PROVISIONS OF THIS NOTE INCLUDING THOSE ON PAGES 1 THROUGH 3 AND IN THE DISCLOSURE STATEMENT WHICH IS INCORPORATED HEREIN BY REFERENCE. (1) DO NOT SIGN THIS NOTE BEFORE YOU READ IT OR IF IT CONTAINS ANY BLANK SPACES TO BE FILLED IN. (2) YOU ARE ENTITLED TO A COMPLETELY FILLED-IN COPY OF THIS NOTE BEFORE YOU SIGN IT. BY SIGNING THIS NOTE, YOU ACKNOWLEDGE THAT YOU HAVE READ AND RECEIVED A COMPLETED COPY OF THIS ENTIRE NOTE BEFORE SIGNING IT ON THE DATE SHOWN ON PAGE 1. SEE PAGES 1, 2 AND 3 AND THE DISCLOSURE STATEMENT FOR ADDITIONAL IMPORTANT TERMS AND CONDITIONS.**

_____
VALENTIN ESPINOZA
Type or print name of Debtor

X _____
Debtor's signature

_____
EDITH ESPINOZA
Type or print name of Debtor

X _____
Debtor's signature

_____
Type or print name of Debtor

X _____
Debtor's signature

_____
Type or print name of Debtor

X _____
Debtor's signature

---

**FOR MICHIGAN GUARANTORS ONLY: Guaranty Agreement.** For value received, you the undersigned guarantors jointly, severally and unconditionally guarantee the payment of all sums owing under this Note when due and the performance by the Debtors of all promises contained in this Note. Upon default, we may proceed against any of you without first proceeding against any Debtor. The liability of each of you will be primary and will not be affected by any settlement, release, extension, renewal or modification of this Note whether or not by operation of law. Each of you voluntarily and knowingly waives all rights to any demands, presentments, notices and defenses of any kind or nature you might have in connection with this Guaranty. Each of you agrees to pay all expenses including reasonable attorneys' fees incurred by us if we have to enforce this Guaranty. Each of you acknowledges that you have read and agree to all terms of this Guaranty, Note and Disclosure Statement prior to signing below.

_____
Type or print name of Guarantor

X _____
Guarantor's signature

_____
Type or print name of Guarantor

X _____
Guarantor's signature

©2004 National City Corporation



FRNOTE-MULTI-V1_4

2

Recording Requested By:
**RBS Citizens, N.A. c/o Eric A. Carter, VP**
Prepared By: **Debora C. Cox**
**450 E. Boundary St.**
**Chapin, SC 29036**
**888-603-9011**
When recorded mail to:
**FA Document Solutions**
**450 E. Boundary St**
**Chapin, SC 29036**



09/28/2009

*20091467096*

CaseNbr: ███████
Ref Number: ███████
Property Address:
**14534 PAINTER AVE**
**NORWALK, CA 90650**

CA0-ADT                                    9/21/2009                 This space for Recorder's use

MERS Phone #: 888-679-6377

## ASSIGNMENT OF DEED OF TRUST

For Value Received, the undersigned holder of a Deed of Trust (herein "Assignor") whose address is **6750 Miller Road Brecksville, OH 44141** does hereby grant, sell, assign, transfer and convey unto **Mortgage Electronic Registration System ("MERS") as Nominee for RBS Citizens, N.A.** whose address is **3300 S. W. 34th Avenue, Suite 101, Ocala, FL 34474** all beneficial interest under that certain Deed of Trust described below together with the note(s) and obligations therein described and the money due and to become due thereon with interest and all rights accrued or to accrue under said Deed of Trust.

| | |
|---|---|
| Original Lender: | **NATIONAL CITY BANK** |
| Original Borrower(s): | **VALENTIN ESPINOZA AND EDITH ESPINOZA HUSBAND AND WIFE AS COMMUNITY** |
| Original Trustee: | **NATIONAL CITY BANK** |
| Date of Deed of Trust: | **3/28/2007** |
| Original Loan Amount: | **$87,000.00** |

Recorded in **Los Angeles County, CA** on: 3/30/2007, book N/A, page N/A and instrument number 20070749516

IN WITNESS WHEREOF, the undersigned has caused this Assignment of Deed of Trust to be executed on 9/21/2009

**National City Bank**

By: _____
Jamie Harris, Authorized Officer

State of SC, County of **Lexington**

The foregoing instrument was acknowledged before me, a Notary Public, on 9/21/2009 by **Jamie Harris, Authorized Officer of National City Bank** on behalf of the corporation.

_____
Notary Public: Andrea D. St. John
My Commission Expires: 4/3/2010

ANDREA D. St.JOHN
Notary Public
State of South Carolina
My Commission Expires April 3, 2010

**EXHIBIT "6"**

File No.: ANG694

# RESTRICTED USE APPRAISAL REPORT



## Date of Valuation:

10/01/2014

## Located At:

14534 Painter Ave
Tract #15584 Lot 50
Norwalk, CA 90650

## For:

Law Office of Luis G. Torres
1712 W Beverly Blvd., Suite 104, Montebello, CA 90640

## Table of Contents:

Letter of Transmittal ........................................................................................................................... 1
URAR ................................................................................................................................................ 2
Additional Comparables 4-6 ............................................................................................................. 8
Supplemental Addendum .................................................................................................................. 9
Assumptions and Limiting Conditons ............................................................................................... 12
Clarifications - Addedum ................................................................................................................... 13
USPAP Identification ........................................................................................................................ 15
Realquest Property Profile ................................................................................................................ 16
Building Sketch (Page - 1) ................................................................................................................ 17
Location Map ..................................................................................................................................... 18
Plat Map ............................................................................................................................................ 19
Subject Photos .................................................................................................................................. 20
Photograph Addendum ...................................................................................................................... 21
Photograph Addendum ...................................................................................................................... 22
Photograph Addendum ...................................................................................................................... 23
Comparable Photos 1-3 .................................................................................................................... 24
Comparable Photos 4-6 .................................................................................................................... 25
UAD Definitions Addendum ............................................................................................................... 26
Appraiser's License ........................................................................................................................... 29
E & O Insurance ................................................................................................................................ 30

Appraisal Network Group
2105 Foothill Blvd., Suite B200
La Verne, CA 91750
(626) 641-5699

10/02/2014

Law Office of Luis G. Torres
1712 W Beverly Blvd., Suite 104
Montebello, CA 90640

Re: Property:        14534 Painter Ave
                     Norwalk, CA 90650
    Borrower:        N/A
    File No.:        ANG694

Opinion of Value: $  315,000
Effective Date:      10/01/2014

Thank you for choosing Appraisal Network Group for your valuation needs. Per your requested, the attached Restricted Appraisal Report. We have personally inspected, investigated and analyzed the fee simple property rights of the real property referenced above. The purpose of the report is to assist you in determining the most likely range of market value for the subject property. This transmittal letter is not an appraisal report. The actual report accompanies this letter.

The report describes data gathered during our investigation of the property. The methods of approach and reasoning in the valuation of the relevant factors of the property are contained within the report. The opinion of value expressed is not subject to hypothetical conditions or extraordinary assumptions. The opinion is subject to general assumptions, limiting conditions and instructions described in the report.

Our conclusion for the most likely range of market value for the subject property is $315,000 as of 10/01/2014. It has been a pleasure to assist you. Please do not hesitate to contact me or any of my staff if we can be of additional service to you.

Thanks again for your business!  We hope to here from you again soon.

Sincerely,

Kenneth Le
License or Certification #: AL042794
State: CA        Expires: 07/04/2015
kenneth@appraisalnetworkgroup.com

# Uniform Residential Appraisal Report

File # ANG694

File # ANG694

## SUBJECT

| | | | | |
|---|---|---|---|---|
| Property Address  14534 Painter Ave | City  Norwalk | | State  CA | Zip Code  90650 |

Borrower  N/A     Owner of Public Record  Valentin Espinosa & Edith     County  Los Angeles

Legal Description  Tract #15584 Lot 50

Assessor's Parcel #  8070-006-003     Tax Year  2013     R.E. Taxes $  2,916

Neighborhood Name  N/A     Map Reference  737-B3     Census Tract  5524.00

Occupant ☒ Owner ☐ Tenant ☐ Vacant     Special Assessments $  0     ☐ PUD     HOA $  0     ☐ per year ☐ per month

Property Rights Appraised ☒ Fee Simple ☐ Leasehold ☐ Other (describe)

Assignment Type ☐ Purchase Transaction ☐ Refinance Transaction ☒ Other (describe)  Personal Bankruptcy

Lender/Client  Law Office of Luis G. Torres     Address  1712 W Beverly Blvd., Suite 104, Montebello, CA 90640

Is the subject property currently offered for sale or has it been offered for sale in the twelve months prior to the effective date of this appraisal?     ☐ Yes ☒ No

Report data source(s) used, offering price(s), and date(s).     Not currently listed for sale or has been offered for sale within the past 12 months per CRMLS

records.

## CONTRACT

I ☐ did ☒ did not analyze the contract for sale for the subject purchase transaction. Explain the results of the analysis of the contract for sale or why the analysis was not

performed.

Contract Price $     Date of Contract     Is the property seller the owner of public record?     ☐ Yes ☐ No  Data Source(s)

Is there any financial assistance (loan charges, sale concessions, gift or downpayment assistance, etc.) to be paid by any party on behalf of the borrower?     ☐ Yes ☐ No

If Yes, report the total dollar amount and describe the items to be paid.

## NEIGHBORHOOD

Note: Race and the racial composition of the neighborhood are not appraisal factors.

| Neighborhood Characteristics | | | One-Unit Housing Trends | | | One-Unit Housing | | Present Land Use % |
|---|---|---|---|---|---|---|---|---|
| Location ☐ Urban ☒ Suburban ☐ Rural | | | Property Values ☐ Increasing ☒ Stable ☐ Declining | | | PRICE $ (000) | AGE (yrs) | One-Unit  80 % |
| Built-Up ☒ Over 75% ☐ 25-75% ☐ Under 25% | | | Demand/Supply ☐ Shortage ☒ In Balance ☐ Over Supply | | | | | 2-4 Unit  5 % |
| Growth ☐ Rapid ☒ Stable ☐ Slow | | | Marketing Time ☒ Under 3 mths ☐ 3-6 mths ☐ Over 6 mths | | | 160  Low  40 | | Multi-Family  5 % |
| Neighborhood Boundaries     Please see attached general comment addendum. | | | | | | 800  High  90 | | Commercial  10 % |
| | | | | | | 350  Pred.  62 | | Other  % |

Neighborhood Description     Please see attached general comment addendum.

Market Conditions (including support for the above conclusions)     Please see attached comment addendum.

## SITE

| | | | | |
|---|---|---|---|---|
| Dimensions  Please refer to the plat map (52 x 100) | Area  5,200 sf | | Shape  Rectangular | View  N;Res; |

Specific Zoning Classification  NOR1     Zoning Description  One Unit Per Lot / Single Family Residence Permitted; County Use (0100)

Zoning Compliance ☒ Legal ☐ Legal Nonconforming (Grandfathered Use) ☐ No Zoning ☐ Illegal (describe)

Is the highest and best use of subject property as improved (or as proposed per plans and specifications) the present use?     ☒ Yes ☐ No  If No, describe

| Utilities | Public | Other (describe) | | Public | Other (describe) | Off-site Improvements – Type | Public | Private |
|---|---|---|---|---|---|---|---|---|
| Electricity | ☒ | ☐ | Water | ☒ | ☐ | Street  Concrete/Asphalt | ☒ | ☐ |
| Gas | ☒ | ☐ | Sanitary Sewer | ☒ | ☐ | Alley  None | ☐ | ☐ |

FEMA Special Flood Hazard Area ☐ Yes ☒ No  FEMA Flood Zone  X     FEMA Map #  06037C1843F     FEMA Map Date  09/26/2008

Are the utilities and off-site improvements typical for the market area?     ☒ Yes ☐ No  If No, describe

Are there any adverse site conditions or external factors (easements, encroachments, environmental conditions, land uses, etc.)?     ☐ Yes ☒ No  If Yes, describe

No adverse environmental conditions noted or observed. The appraiser is not an expert at detecting such conditions.

## IMPROVEMENTS

| General Description | | Foundation | | Exterior Description | materials/condition | Interior | materials/condition |
|---|---|---|---|---|---|---|---|
| Units ☒ One ☐ One with Accessory Unit | | ☐ Concrete Slab ☒ Crawl Space | | Foundation Walls | Concrete/Avg | Floors | Lam/Crpt/Tile/Avg |
| # of Stories  1 | | ☐ Full Basement ☐ Partial Basement | | Exterior Walls | Stucco/Avg | Walls | Drywall/Avg |
| Type ☒ Det. ☐ Att. ☐ S-Det./End Unit | | Basement Area  0  sq.ft. | | Roof Surface | Composition/Avg | Trim/Finish | Wood/Paint/Avg |
| ☒ Existing ☐ Proposed ☐ Under Const. | | Basement Finish  0  % | | Gutters & Downspouts | None Observed | Bath Floor | Tile/Avg |
| Design (Style)  Traditional | | ☐ Outside Entry/Exit ☐ Sump Pump | | Window Type | Aluminum/Avg | Bath Wainscot | Tile/Avg |
| Year Built  1949 | | Evidence of ☐ Infestation | | Storm Sash/Insulated | None/Yes/Avg | Car Storage | ☐ None |
| Effective Age (Yrs)  20 | | ☐ Dampness ☐ Settlement | | Screens | Yes/Avg | ☒ Driveway  # of Cars  2 |
| Attic ☐ None | | Heating ☐ FWA ☐ HWBB ☐ Radiant | | Amenities | ☐ Woodstove(s) #  0 | Driveway Surface  Concrete |
| ☐ Drop Stair ☐ Stairs | | ☒ Other  Wall  Fuel  Gas | | ☐ Fireplace(s) #  0 ☒ Fence  Chain/Blk | | ☐ Garage  # of Cars  1 |
| ☐ Floor ☐ Scuttle | | Cooling ☐ Central Air Conditioning | | ☐ Patio/Deck  Enclo. ☒ Porch  Covd. | | ☐ Carport  # of Cars  0 |
| ☐ Finished ☐ Heated | | ☐ Individual ☒ Other  None | | ☐ Pool  None | ☐ Other  None | ☐ Att. ☐ Det. ☐ Built-in |
| Appliances ☐ Refrigerator ☒ Range/Oven ☐ Dishwasher ☐ Disposal ☐ Microwave ☐ Washer/Dryer ☒ Other (describe)  Fan Hood | | | | | | | |

Finished area above grade contains:     4  Rooms     2  Bedrooms     1.0  Bath(s)     752  Square Feet of Gross Living Area Above Grade

Additional features (special energy efficient items, etc.).     Please see attached general comment addendum.

Describe the condition of the property (including needed repairs, deterioration, renovations, remodeling, etc.).     C4;Kitchen-updated-one to five years
ago;Bathrooms-not updated;The subject property is in overall average condition with no repairs needed. Effective age is less than actual age due to
basic maintenance and some recent updated. These issues were incorporated into the C4 overall condition rating. No major items of deferred
maintenance noted. Physical depreciation was calculated via the Age/Life Method.

Are there any physical deficiencies or adverse conditions that affect the livability, soundness, or structural integrity of the property?     ☐ Yes ☒ No  If Yes, describe
No adverse conditions noted at time of appraisal that would have any affect on livability, soundness or structural integrity of the subject property.

Does the property generally conform to the neighborhood (functional utility, style, condition, use, construction, etc.)?     ☒ Yes ☐ No  If No, describe
The subject property generally conforms to the neighborhood with respect to overall functional utility, condition, quality, appeal and use for this
market area.

# Uniform Residential Appraisal Report
File # ANG694

| There are | 3 | comparable properties currently offered for sale in the subject neighborhood ranging in price from $ 303,000 | to $ 329,000 | . |
| There are | 9 | comparable sales in the subject neighborhood within the past twelve months ranging in sale price from $ 280,000 | to $ 335,000 | . |

| FEATURE | SUBJECT | COMPARABLE SALE # 1 | COMPARABLE SALE # 2 | COMPARABLE SALE # 3 |
|---|---|---|---|---|
| Address | 14534 Painter Ave Norwalk, CA 90650 | 14503 Painter Ave Norwalk, CA 90650 | 14520 Pontlavoy Ave Norwalk, CA 90650 | 14324 Madris Ave Norwalk, CA 90650 |
| Proximity to Subject | | 0.07 miles NW | 0.25 miles E | 0.97 miles W |
| Sale Price | $ | $ 325,000 | $ 320,000 | $ 315,000 |
| Sale Price/Gross Liv. Area | $ sq.ft. | $ 419.35 sq.ft. | $ 382.78 sq.ft. | $ 414.47 sq.ft. |
| Data Source(s) | | CRMLS#MB14110608;DOM 26 | CRMLS#PW14080782;DOM 7 | CRMLS#DW14041211;DOM 6 |
| Verification Source(s) | | Doc#769651; LP$309,000 | Doc#571211; LP$325,000 | Doc#316164; LP$310,000 |

| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment |
|---|---|---|---|---|---|---|---|
| Sales or Financing Concessions | | ArmLth Conv;10000 | -10,000 | ArmLth FHA;0 | | ArmLth Conv;0 | |
| Date of Sale/Time | | s07/14;c06/14 | | s06/14;c05/14 | | s03/14;c03/14 | |
| Location | N;Res; | N;Res; | | N;Res; | | A;ProxTrSt;Comm. | +4,500 |
| Leasehold/Fee Simple | Fee Simple | Fee Simple | | Fee Simple | | Fee Simple | |
| Site | 5,200 sf | 5,000 sf | 0 | 2,382 sf | +7,000 | 6,230 sf | -2,500 |
| View | N;Res; | N;Res; | | N;Res; | | N;Res; | |
| Design (Style) | DT1;Traditional | DT1;Traditional | | DT1;Traditional | | DT1;Traditional | |
| Quality of Construction | Q4 | Q4 | | Q4 | | Q4 | |
| Actual Age | 65 | 65 | | 56 | 0 | 66 | 0 |
| Condition | C4 | C4 | | C3 | -15,000 | C4 | |
| Above Grade | Total | Bdrms. | Baths | Total | Bdrms. | Baths | Total | Bdrms. | Baths | Total | Bdrms. | Baths |
| Room Count | 4 | 2 | 1.0 | 4 | 2 | 1.0 | 5 | 3 | 1.0 | 0 | 4 | 2 | 1.0 | 0 |
| Gross Living Area | 752 sq.ft. | 775 sq.ft. | 0 | 836 sq.ft. | 0 | 760 sq.ft. | 0 |
| Basement & Finished Rooms Below Grade | 0sf | 0sf | | 0sf | | 0sf | |
| Functional Utility | Garage Convsn. | Garage Convsn. | | No Garg Convs. | -2,000 | No Garg Convs. | -2,000 |
| Heating/Cooling | Wall/None | Wall/None | | Wall/None | | Wall/None | |
| Energy Efficient Items | Standard | Standard | | Standard | | Standard | |
| Garage/Carport | 1ga2dw | 1ga2dw | | 1cp2dw | +5,000 | 1ga2dw | |
| Porch/Patio/Deck | Patio | Patio | | Patio | | Patio | |
| Pool/Spa | No Pool/No Spa | No Pool/No Spa | | No Pool/No Spa | | No Pool/No Spa | |
| Net Adjustment (Total) | | ☐ + ☒ - $ | -10,000 | ☐ + ☒ - $ | -5,000 | ☐ + ☐ - $ | 0 |
| Adjusted Sale Price of Comparables | | Net Adj. 3.1 % Gross Adj. 3.1 % $ | 315,000 | Net Adj. 1.6 % Gross Adj. 9.1 % $ | 315,000 | Net Adj. 0.0 % Gross Adj. 2.9 % $ | 315,000 |

I ☒ did ☐ did not research the sale or transfer history of the subject property and comparable sales. If not, explain

My research ☐ did ☒ did not reveal any prior sales or transfers of the subject property for the three years prior to the effective date of this appraisal.
Data Source(s)   CRMLS and Realquest
My research ☒ did ☐ did not reveal any prior sales or transfers of the comparable sales for the year prior to the date of sale of the comparable sale.
Data Source(s)   CRMLS and Realquest
Report the results of the research and analysis of the prior sale or transfer history of the subject property and comparable sales (report additional prior sales on page 3).

| ITEM | SUBJECT | COMPARABLE SALE #1 | COMPARABLE SALE #2 | COMPARABLE SALE #3 |
|---|---|---|---|---|
| Date of Prior Sale/Transfer | | | 02/07/2014 | |
| Price of Prior Sale/Transfer | | | $212,000 | |
| Data Source(s) | | CRMLS/Realquest | CRMLS/Realquest | CRMLS/Realquest |
| Effective Date of Data Source(s) | 10/01/2014 | 10/01/2014 | 10/01/2014 | 10/01/2014 |

Analysis of prior sale or transfer history of the subject property and comparable sales   According to the public records, the subject property has not transferred within the past 3 years. Comparable sales #1 & 3 have not transfered within the past 12 months. Comparable #2 has transferred on 02/07/2014 for the amount of $212,000 via grant deed and the document #136254. Comparable #2 was purchased by investors, rehabbed/remodeled and resold higher as a result which accounts for its increased in sale prices.

Summary of Sales Comparison Approach   Please see attached general comment addendum.

Indicated Value by Sales Comparison Approach $   315,000

Indicated Value by: Sales Comparison Approach $  315,000   Cost Approach (if developed) $  315,875   Income Approach (if developed) $

The Sales Comparison Approach is weighted most as it best reflects the actions of informed buyers and sellers in the current market. Additional support is provided by the Cost Approach. The Income Approach is not used since subject area homes are typically owner occupied.

This appraisal is made ☒ "as is", ☐ subject to completion per plans and specifications on the basis of a hypothetical condition that the improvements have been completed, ☐ subject to the following repairs or alterations on the basis of a hypothetical condition that the repairs or alterations have been completed, or ☐ subject to the following required inspection based on the extraordinary assumption that the condition or deficiency does not require alteration or repair:

Based on a complete visual inspection of the interior and exterior areas of the subject property, defined scope of work, statement of assumptions and limiting conditions, and appraiser's certification, my (our) opinion of the market value, as defined, of the real property that is the subject of this report is $  315,000 , as of  10/01/2014 , which is the date of inspection and the effective date of this appraisal.

# Uniform Residential Appraisal Report

File # ANG694

## ADDITIONAL COMMENTS

The subject was appraised in its present condition at market value.

In the case of the subject property being a sale, market value was established, regardless of the inclusion of any personal property or closing costs. Any closing cost arrangements or personal property exchanges have no effect on the value or marketability of the subject and further, do not influence the indicated appraised value.

In the course of researching this appraisal assignment, discrepancies were sometimes noted between differing data sources. In these instances, attempts were made to contact selling or listings for the comparable sales in order to ascertain the correct information.

Please note that the comparable photographs in this report reflect their condition as of the date of drive-by analysis, but not necessarily reflect their condition as of their date of sale. Information provided in the appraisal report regarding comparables reflects their condition as of their sales date.

A digital camera was utilized for all photographs in this report and the digital images have not been inappropriately altered. All subject property and all of the comparable photographs have been taken by the appraiser.

The best and most reliable information available to the appraiser was utilized for FEMA flood information (Flood zone, panel number and map date). It should be noted however, that the appraiser is not an expert in flood zone determination. Appraiser recommends the use of a service that is proficient in this area if there are any concerns regarding the flood information indicated in this report.

This report may contain digitally reproduced signatures, which are approved by FNMA, GMNA, FHA and HUD. This appraisal software allows an appraiser to attach a digitally reproduced signature by entering a secret password known only to the signing appraiser(s). Furthermore, after the report is digitally signed, it is locked and cannot be altered by anyone but the signing appraiser(s). The appraiser(s) accept full responsibility for this digitally signed appraisal report.

I have performed no other services, as an appraiser or in any other capacity, regarding the property that is the subject of this report within the three year period immediately preceding acceptance of this assignment.

## COST APPROACH TO VALUE (not required by Fannie Mae)

Provide adequate information for the lender/client to replicate the below cost figures and calculations.

Support for the opinion of site value (summary of comparable land sales or other methods for estimating site value)  Site or land value is typical for the area and determined through extraction.

| ESTIMATED ☐ REPRODUCTION OR ☒ REPLACEMENT COST NEW | OPINION OF SITE VALUE | | | =$ | 200,000 |
|---|---|---|---|---|---|
| Source of cost data   Craftsman National | DWELLING | 752 Sq.Ft. @ $ | 148.93 | =$ | 111,995 |
| Quality rating from cost service   4   Effective date of cost data  2014 | | 0 Sq.Ft. @ $ | | =$ | |
| Comments on Cost Approach (gross living area calculations, depreciation, etc.) | | | | =$ | |
| 60% to 70% of Land to Improvement Ratio is not uncommon for "Like | Garage/Carport | 220 Sq.Ft. @ $ | 74.46 | =$ | 16,381 |
| Properties" in this market area, posing no marketing detriment. Physical | Total Estimate of Cost-New | | | =$ | 128,376 |
| Depreciation is based upon Effective Age and Deferred Maintenance | Less | Physical | Functional | External | |
| from a 65 year base. Publicly recorded gross living area (GLA) is 750 SF; | Depreciation | 39,501 | 2,000 | =$( | 41,501) |
| and on-site measurements were 752 SF. Functional Depreciation was for | Depreciated Cost of Improvements | | | =$ | 86,875 |
| the cost-to-cure to convert the garage back into a functional garage. | "As-is" Value of Site Improvements | | | =$ | 29,000 |
| Estimated Remaining Economic Life (HUD and VA only)   45 Years | INDICATED VALUE BY COST APPROACH | | | =$ | 315,875 |

## INCOME APPROACH TO VALUE (not required by Fannie Mae)

| Estimated Monthly Market Rent $ | X Gross Rent Multiplier | = $ | Indicated Value by Income Approach |
|---|---|---|---|
| Summary of Income Approach (including support for market rent and GRM) | | | |

## PROJECT INFORMATION FOR PUDs (if applicable)

Is the developer/builder in control of the Homeowners' Association (HOA)?   ☐ Yes  ☐ No   Unit type(s)  ☐ Detached  ☐ Attached

Provide the following information for PUDs ONLY if the developer/builder is in control of the HOA and the subject property is an attached dwelling unit.

Legal Name of Project

| Total number of phases | Total number of units | Total number of units sold |
|---|---|---|
| Total number of units rented | Total number of units for sale | Data source(s) |

Was the project created by the conversion of existing building(s) into a PUD?   ☐ Yes  ☐ No  If Yes, date of conversion.

Does the project contain any multi-dwelling units?   ☐ Yes  ☐ No  Data Source

Are the units, common elements, and recreation facilities complete?   ☐ Yes  ☐ No  If No, describe the status of completion.

Are the common elements leased to or by the Homeowners' Association?   ☐ Yes  ☐ No  If Yes, describe the rental terms and options.

Describe common elements and recreational facilities.

# Uniform Residential Appraisal Report

File # ANG694

This report form is designed to report an appraisal of a one-unit property or a one-unit property with an accessory unit; including a unit in a planned unit development (PUD). This report form is not designed to report an appraisal of a manufactured home or a unit in a condominium or cooperative project.

This appraisal report is subject to the following scope of work, intended use, intended user, definition of market value, statement of assumptions and limiting conditions, and certifications. Modifications, additions, or deletions to the intended use, intended user, definition of market value, or assumptions and limiting conditions are not permitted. The appraiser may expand the scope of work to include any additional research or analysis necessary based on the complexity of this appraisal assignment. Modifications or deletions to the certifications are also not permitted. However, additional certifications that do not constitute material alterations to this appraisal report, such as those required by law or those related to the appraiser's continuing education or membership in an appraisal organization, are permitted.

**SCOPE OF WORK:**  The scope of work for this appraisal is defined by the complexity of this appraisal assignment and the reporting requirements of this appraisal report form, including the following definition of market value, statement of assumptions and limiting conditions, and certifications. The appraiser must, at a minimum: (1) perform a complete visual inspection of the interior and exterior areas of the subject property, (2) inspect the neighborhood, (3) inspect each of the comparable sales from at least the street, (4) research, verify, and analyze data from reliable public and/or private sources, and (5) report his or her analysis, opinions, and conclusions in this appraisal report.

**INTENDED USE:**  The intended use of this appraisal report is for the lender/client to evaluate the property that is the subject of this appraisal for a mortgage finance transaction.

**INTENDED USER:**  The intended user of this appraisal report is the lender/client.

**DEFINITION OF MARKET VALUE:**  The most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller, each acting prudently, knowledgeably and assuming the price is not affected by undue stimulus. Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby: (1) buyer and seller are typically motivated; (2) both parties are well informed or well advised, and each acting in what he or she considers his or her own best interest; (3) a reasonable time is allowed for exposure in the open market; (4) payment is made in terms of cash in U. S. dollars or in terms of financial arrangements comparable thereto; and (5) the price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions* granted by anyone associated with the sale.

*Adjustments to the comparables must be made for special or creative financing or sales concessions. No adjustments are necessary for those costs which are normally paid by sellers as a result of tradition or law in a market area; these costs are readily identifiable since the seller pays these costs in virtually all sales transactions. Special or creative financing adjustments can be made to the comparable property by comparisons to financing terms offered by a third party institutional lender that is not already involved in the property or transaction. Any adjustment should not be calculated on a mechanical dollar for dollar cost of the financing or concession but the dollar amount of any adjustment should approximate the market's reaction to the financing or concessions based on the appraiser's judgment.

**STATEMENT OF ASSUMPTIONS AND LIMITING CONDITIONS:**  The appraiser's certification in this report is subject to the following assumptions and limiting conditions:

1.  The appraiser will not be responsible for matters of a legal nature that affect either the property being appraised or the title to it, except for information that he or she became aware of during the research involved in performing this appraisal. The appraiser assumes that the title is good and marketable and will not render any opinions about the title.

2.  The appraiser has provided a sketch in this appraisal report to show the approximate dimensions of the improvements. The sketch is included only to assist the reader in visualizing the property and understanding the appraiser's determination of its size.

3.  The appraiser has examined the available flood maps that are provided by the Federal Emergency Management Agency (or other data sources) and has noted in this appraisal report whether any portion of the subject site is located in an identified Special Flood Hazard Area. Because the appraiser is not a surveyor, he or she makes no guarantees, express or implied, regarding this determination.

4.  The appraiser will not give testimony or appear in court because he or she made an appraisal of the property in question, unless specific arrangements to do so have been made beforehand, or as otherwise required by law.

5.  The appraiser has noted in this appraisal report any adverse conditions (such as needed repairs, deterioration, the presence of hazardous wastes, toxic substances, etc.) observed during the inspection of the subject property or that he or she became aware of during the research involved in performing the appraisal. Unless otherwise stated in this appraisal report, the appraiser has no knowledge of any hidden or unapparent physical deficiencies or adverse conditions of the property (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) that would make the property less valuable, and has assumed that there are no such conditions and makes no guarantees or warranties, express or implied. The appraiser will not be responsible for any such conditions that do exist or for any engineering or testing that might be required to discover whether such conditions exist. Because the appraiser is not an expert in the field of environmental hazards, this appraisal report must not be considered as an environmental assessment of the property.

6.  The appraiser has based his or her appraisal report and valuation conclusion for an appraisal that is subject to satisfactory completion, repairs, or alterations on the assumption that the completion, repairs, or alterations of the subject property will be performed in a professional manner.

Form 1004UAD — "WinTOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE

# Uniform Residential Appraisal Report

File # ANG694

**APPRAISER'S CERTIFICATION:** The Appraiser certifies and agrees that:

1. I have, at a minimum, developed and reported this appraisal in accordance with the scope of work requirements stated in this appraisal report.

2. I performed a complete visual inspection of the interior and exterior areas of the subject property. I reported the condition of the improvements in factual, specific terms. I identified and reported the physical deficiencies that could affect the livability, soundness, or structural integrity of the property.

3. I performed this appraisal in accordance with the requirements of the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

4. I developed my opinion of the market value of the real property that is the subject of this report based on the sales comparison approach to value. I have adequate comparable market data to develop a reliable sales comparison approach for this appraisal assignment. I further certify that I considered the cost and income approaches to value but did not develop them, unless otherwise indicated in this report.

5. I researched, verified, analyzed, and reported on any current agreement for sale for the subject property, any offering for sale of the subject property in the twelve months prior to the effective date of this appraisal, and the prior sales of the subject property for a minimum of three years prior to the effective date of this appraisal, unless otherwise indicated in this report.

6. I researched, verified, analyzed, and reported on the prior sales of the comparable sales for a minimum of one year prior to the date of sale of the comparable sale, unless otherwise indicated in this report.

7. I selected and used comparable sales that are locationally, physically, and functionally the most similar to the subject property.

8. I have not used comparable sales that were the result of combining a land sale with the contract purchase price of a home that has been built or will be built on the land.

9. I have reported adjustments to the comparable sales that reflect the market's reaction to the differences between the subject property and the comparable sales.

10. I verified, from a disinterested source, all information in this report that was provided by parties who have a financial interest in the sale or financing of the subject property.

11. I have knowledge and experience in appraising this type of property in this market area.

12. I am aware of, and have access to, the necessary and appropriate public and private data sources, such as multiple listing services, tax assessment records, public land records and other such data sources for the area in which the property is located.

13. I obtained the information, estimates, and opinions furnished by other parties and expressed in this appraisal report from reliable sources that I believe to be true and correct.

14. I have taken into consideration the factors that have an impact on value with respect to the subject neighborhood, subject property, and the proximity of the subject property to adverse influences in the development of my opinion of market value. I have noted in this appraisal report any adverse conditions (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) observed during the inspection of the subject property or that I became aware of during the research involved in performing this appraisal. I have considered these adverse conditions in my analysis of the property value, and have reported on the effect of the conditions on the value and marketability of the subject property.

15. I have not knowingly withheld any significant information from this appraisal report and, to the best of my knowledge, all statements and information in this appraisal report are true and correct.

16. I stated in this appraisal report my own personal, unbiased, and professional analysis, opinions, and conclusions, which are subject only to the assumptions and limiting conditions in this appraisal report.

17. I have no present or prospective interest in the property that is the subject of this report, and I have no present or prospective personal interest or bias with respect to the participants in the transaction. I did not base, either partially or completely, my analysis and/or opinion of market value in this appraisal report on the race, color, religion, sex, age, marital status, handicap, familial status, or national origin of either the prospective owners or occupants of the subject property or of the present owners or occupants of the properties in the vicinity of the subject property or on any other basis prohibited by law.

18. My employment and/or compensation for performing this appraisal or any future or anticipated appraisals was not conditioned on any agreement or understanding, written or otherwise, that I would report (or present analysis supporting) a predetermined specific value, a predetermined minimum value, a range or direction in value, a value that favors the cause of any party, or the attainment of a specific result or occurrence of a specific subsequent event (such as approval of a pending mortgage loan application).

19. I personally prepared all conclusions and opinions about the real estate that were set forth in this appraisal report. If I relied on significant real property appraisal assistance from any individual or individuals in the performance of this appraisal or the preparation of this appraisal report, I have named such individual(s) and disclosed the specific tasks performed in this appraisal report. I certify that any individual so named is qualified to perform the tasks. I have not authorized anyone to make a change to any item in this appraisal report; therefore, any change made to this appraisal is unauthorized and I will take no responsibility for it.

20. I identified the lender/client in this appraisal report who is the individual, organization, or agent for the organization that ordered and will receive this appraisal report.

Form 1004UAD — "WinTOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE

# Uniform Residential Appraisal Report

File # ANG694

21.  The lender/client may disclose or distribute this appraisal report to: the borrower; another lender at the request of the borrower; the mortgagee or its successors and assigns; mortgage insurers; government sponsored enterprises; other secondary market participants; data collection or reporting services; professional appraisal organizations; any department, agency, or instrumentality of the United States; and any state, the District of Columbia, or other jurisdictions; without having to obtain the appraiser's or supervisory appraiser's (if applicable) consent. Such consent must be obtained before this appraisal report may be disclosed or distributed to any other party (including, but not limited to, the public through advertising, public relations, news, sales, or other media).

22.  I am aware that any disclosure or distribution of this appraisal report by me or the lender/client may be subject to certain laws and regulations. Further, I am also subject to the provisions of the Uniform Standards of Professional Appraisal Practice that pertain to disclosure or distribution by me.

23.  The borrower, another lender at the request of the borrower, the mortgagee or its successors and assigns, mortgage insurers, government sponsored enterprises, and other secondary market participants may rely on this appraisal report as part of any mortgage finance transaction that involves any one or more of these parties.

24.  If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

25.  Any intentional or negligent misrepresentation(s) contained in this appraisal report may result in civil liability and/or criminal penalties including, but not limited to, fine or imprisonment or both under the provisions of Title 18, United States Code, Section 1001, et seq., or similar state laws.

**SUPERVISORY APPRAISER'S CERTIFICATION:**  The Supervisory Appraiser certifies and agrees that:

1.  I directly supervised the appraiser for this appraisal assignment, have read the appraisal report, and agree with the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

2.  I accept full responsibility for the contents of this appraisal report including, but not limited to, the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

3.  The appraiser identified in this appraisal report is either a sub-contractor or an employee of the supervisory appraiser (or the appraisal firm), is qualified to perform this appraisal, and is acceptable to perform this appraisal under the applicable state law.

4.  This appraisal report complies with the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report  was  prepared.

5.  If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

| APPRAISER | SUPERVISORY APPRAISER (ONLY IF REQUIRED) |
|---|---|
| Signature _Kenneth Le_ | Signature _____ |
| Name  Kenneth Le | Name _____ |
| Company Name   Appraisal Network Group | Company Name _____ |
| Company Address   2105 Foothill Blvd., Suite B200 | Company Address _____ |
| La Verne, CA 91750 | _____ |
| Telephone Number   (626) 641-5699 | Telephone Number _____ |
| Email Address   kenneth@appraisalnetworkgroup.com | Email Address _____ |
| Date of Signature and Report    10/02/2014 | Date of Signature _____ |
| Effective Date of Appraisal     10/01/2014 | State Certification # _____ |
| State Certification # _____ | or State License # _____ |
| or State License #   AL042794 | State _____ |
| or Other (describe) _____ State # _____ | Expiration Date of Certification or License _____ |
| State  CA | |
| Expiration Date of Certification or License      07/04/2015 | **SUBJECT PROPERTY** |
| | ☐ Did not inspect subject property |
| ADDRESS OF PROPERTY APPRAISED | ☐ Did inspect exterior of subject property from street |
| 14534 Painter Ave | Date of Inspection _____ |
| Norwalk, CA 90650 | ☐ Did inspect interior and exterior of subject property |
| APPRAISED VALUE OF SUBJECT PROPERTY $       315,000 | Date of Inspection _____ |
| LENDER/CLIENT | |
| Name  No AMC | **COMPARABLE SALES** |
| Company Name   Law Office of Luis G. Torres | |
| Company Address   1712 W Beverly Blvd., Suite 104, Montebello, | ☐ Did not inspect exterior of comparable sales from street |
| CA 90640 | ☐ Did inspect exterior of comparable sales from street |
| Email Address _____ | Date of Inspection _____ |

# Uniform Residential Appraisal Report

File # ANG694

| FEATURE | SUBJECT | COMPARABLE SALE # 4 | | COMPARABLE SALE # 5 | | COMPARABLE SALE # 6 | |
|---|---|---|---|---|---|---|---|
| Address  14534 Painter Ave Norwalk, CA 90650 | | 13049 Liggett St Norwalk, CA 90650 | | | | | |
| Proximity to Subject | | 0.18 miles N | | | | | |
| Sale Price | $ | $            329,000 | | $ | | $ | |
| Sale Price/Gross Liv. Area | $            sq.ft. | $  330.32 sq.ft. | | $         sq.ft. | | $         sq.ft. | |
| Data Source(s) | | CRMLS#PW14200930;DOM 14 | | | | | |
| Verification Source(s) | | Original List Price $329,000 | | | | | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment |
| Sales or Financing | | Listing | | | | | |
| Concessions | | Unknown;0 | | | | | |
| Date of Sale/Time | | c09/14 | | | | | |
| Location | N;Res; | N;Res; | | | | | |
| Leasehold/Fee Simple | Fee Simple | Fee Simple | | | | | |
| Site | 5,200 sf | 5,976 sf | 0 | | | | |
| View | N;Res; | N;Res; | | | | | |
| Design (Style) | DT1;Traditional | DT1;Traditional | | | | | |
| Quality of Construction | Q4 | Q4 | | | | | |
| Actual Age | 65 | 65 | | | | | |
| Condition | C4 | C4 | | | | | |
| Above Grade | Total | Bdrms. | Baths | Total | Bdrms. | Baths | 0 | Total | Bdrms. | Baths | | Total | Bdrms. | Baths | |

| Above Grade | Total | Bdrms. | Baths | Total | Bdrms. | Baths | | Total | Bdrms. | Baths | | Total | Bdrms. | Baths | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Room Count | 4 | 2 | 1.0 | 5 | 3 | 1.0 | 0 | | | | | | | | |
| Gross Living Area | 752 sq.ft. | | | 996 sq.ft. | | | -7,000 | sq.ft. | | | | sq.ft. | | | |
| Basement & Finished | 0sf | | | 0sf | | | | | | | | | | | |
| Rooms Below Grade | | | | | | | | | | | | | | | |
| Functional Utility | Garage Convsn. | | | No Garg Convs. | | | -2,000 | | | | | | | | |
| Heating/Cooling | Wall/None | | | Wall/None | | | | | | | | | | | |
| Energy Efficient Items | Standard | | | Standard | | | | | | | | | | | |
| Garage/Carport | 1ga2dw | | | 2gd2dw | | | -5,000 | | | | | | | | |
| Porch/Patio/Deck | Patio | | | Patio | | | | | | | | | | | |
| Pool/Spa | No Pool/No Spa | | | No Pool/No Spa | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| Net Adjustment (Total) | | ☐ +  ☒ - | $         -14,000 | ☐ +  ☐ - | $ | ☐ +  ☐ - | $ |
| Adjusted Sale Price | | Net Adj.       4.3 % | | Net Adj.       % | | Net Adj.       % | |
| of Comparables | | Gross Adj.    4.3 % | $   315,000 | Gross Adj.    % | $ | Gross Adj.    % | $ |

Report the results of the research and analysis of the prior sale or transfer history of the subject property and comparable sales (report additional prior sales on page 3).

| ITEM | SUBJECT | COMPARABLE SALE # 4 | COMPARABLE SALE # 5 | COMPARABLE SALE # 6 |
|---|---|---|---|---|
| Date of Prior Sale/Transfer | | | | |
| Price of Prior Sale/Transfer | | | | |
| Data Source(s) | CRMLS/Realquest | CRMLS/Realquest | | |
| Effective Date of Data Source(s) | 10/01/2014 | 10/01/2014 | | |

Analysis of prior sale or transfer history of the subject property and comparable sales      Comparable #4 has not transfered within the past 12 months.

Analysis/Comments    Please see attached general comment addendum.

*(SALES COMPARISON APPROACH)* *(SALE HISTORY)* *(ANALYSIS / COMMENTS)*

Supplemental Addendum

File No. ANG694

| Client | Law Office of Luis G. Torres | | | | | |
|--------|------------------------------|--|--|--|--|--|
| Property Address | 14534 Painter Ave | | | | | |
| City | Norwalk | County | Los Angeles | State | CA | Zip Code | 90650 |
| Owner | Valentin Espinosa & Edith | | | | | |

## URAR: NEIGHBORHOOD - BOUNDARIES

Rosecrans Avenue to the North, Excelsior Drive to the South, Bloomfield Avenue to the West and Carmenita Road to the East. Accessibility is adequate as is availability to utilities, arterial thoroughfares and freeways.  Unless otherwise noted, all comparables are from the same city or legislated "area" as the subject property.

(NOTE: Due to the limited number of available recent sales in the subject's immediate neighborhood, similar enough to the subject for comparative analysis, the appraiser extended the comparable search westward, beyond the 5 Freeway & Bloomfield Avenue, (its more concise neighborhood boundary) to Norwalk Boulevard. This adjoining area is similar in all respects with no measurable differences noted in values after due consideration is given to property characteristics and typical locational factors.  Location adjustments for market differences were deemed unnecessary. [This was determined through a paired sales analysis of their respective market areas by evaluating the differences, (over the last 12 months), in market price ranges and predominant values of sales within their respective map grids (Thomas Guide); and/or within their individual tax districts as defined by the Los Angeles County Tax Assessor's Parcel Numbers (APN). These APNs are asssigned by the Tax Assessor for property tax assessment and broken down by "Book-page-Parcel".  Admittedly, APNs do not mark definitive boundaries for market areas, however, they do isolate geographic locations and are very helpful in determining sale trends within the confines of any given tax area.  The use of tax areas also ensures that all sales evaluated are within reasonable proximity to one another.  In this case, it was apparent that within their respective map grids and/or "Book" designations, there was no basis for making adjustments].

## URAR: NEIGHBORHOOD - DESCRIPTION

This is an established suburban neighborhood consisting mostly of conventional style SFR tract homes of various ages, displaying general similarity in design, appeal and utility, with variations in size. There's an adequate mix of multi-family residences, commercial activity, employment opportunities and public support facilities, (schools, police, hospitals, recreation, fire stations, houses of worship, etc.) which are beneficial to the community, but along with traffic, may pose an adverse affect upon residences in close proximity to them. This area is bounded by a freeway with the most proximate dwellings adversely affected. No atypical social, economic, governmental or environmental trends or characteristics were observed at this time.

## URAR: MARKET CONDITIONS

Market activity appears to be stabilized from the dramatic drops in values in the past 24 months; and the prior highs 3-5 years ago. Market data on recent closed sales in comparison with the asking prices on current active listings suggests that the subject's market is currently stable. This is also evidenced by comparing the closed sales to one another and to the optimistic asking prices of the listings utilized in this report. Stabilization is expected to continue due to the availability of reasonably long term interest rates and lower housing prices, which typically incites an increase in market activity.

Under current market conditions, the reasonable exposure time for the subject property is estimated to be approximately between 1-3 months, which is in line with the area marketing times of the comparable properties.

## URAR: SITE - ADVERSE CONDITIONS OR EXTERNAL FACTORS

SITE AREA: Subject property is an interior lot, located on a residential street. Subject property's site area is incorrectly recorded as 5,152 SF of land in public records. However, the plat map indicates (52 x 100 = 5,200 SF) of site area, which is the figure utilized in this report. In addition, the subject property is located within the general proximity of freeway influences. However, much of the subject's market area suffers equally, and this was taken into consideration when choosing comparables and when determining if adjustments were required in the Market Approach. (This is accounted for in the Market Approach with Location adjustments, if applicable.) There is no adverse external influences bases on observations made during the appraiser's inspection. No other significant factors relating to the subject's site, topography, shape, size, or drainage area were noted.

## URAR: IMPROVEMENTS - ADDITIONAL FEATURES

Unless otherwise stated, all improvements given value in this report appear legal and conforming to market area standards. The improvements reflect enough general updating from original construction to maintain a viable economic life within this age group of homes. The subject property has new interior paint. Kitchen has been updated with kitchen cabinetry, granite countertops, sink and water faucet. Subject property has installed new laminate flooring at living room.  Subject property has professional landscaping with conreted driveway, storage shed and palm trees. Overall, subject property appears to be in C4 condition. Field measurements and room counts are utilized.

Per Realquest records subject's GLA is listed at 750 SF. Per appraiser's site inspection of the subject property, the GLA was calculated at approximately 752 SF.  For purposes of this appraisal report, the actual site calculations were used to report the subject's GLA.

(NOTE 1: Utilities were on and functioning at the time of inspection.)

(NOTE 2: Carbon monoxide detector was not install at the time of inspection.)

(NOTE 3: Subject has an enclosed patio (approximately 496 SF) completed in workman like manner; appraiser was unable to verify a permit; therefore, no value consideration was given. No negative affect towards subject's marketability or appraised value was noted.)

(NOTE 4: The appraiser notes that the 1 car garage has been converted to a bedroom (See Sketch and Photo).  However, the garage door, still in place, is disabled and backed by drywall.  Accordingly, since there is no other covered parking

| Signature | | Signature | |
|-----------|--|-----------|--|
| Name  Kenneth Le | | Name | |
| Date Signed   10/02/2014 | | Date Signed | |
| State Certification # | State  CA | State Certification # | State |
| Or State License #   AL042794 | State | Or State License # | State |

**Supplemental Addendum**

| Client | Law Office of Luis G. Torres | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 14534 Painter Ave | | | | | | |
| City | Norwalk | County | Los Angeles | State | CA | Zip Code | 90650 |
| Owner | Valentin Espinosa & Edith | | | | | | |

structure on the premises and it is not given recognition in the Public Records, the appraiser assumes the conversion to be illegal. Therefore, full value is given to the garage structure but Functional Depreciation of $2,000 was taken in the Cost Approach and a Functional Utility adjustment of the same amount was made in the Market Approach for parking impairment from the non-functional garage door. No negative affect towards subject's marketability or appraised value was noted.)

**SALE COMPARISON COMMENTS:**

Though market activity has been steady overall, there were a limited number of recent sales, within the subject's category of size, age and appeal, available for comparative analysis. Accordingly, one comparable was utilized in the market grid that closed sale over six months from the effective date of this report. However, market conditions have been conducive to the use of slightly older sales with very little risk to the lender and for this reason it is the appraiser's opinion that the older sales utilized in this report were both suitable and necessary for comparative analysis. Though time adjustments were not utilized, each comparable's date of sale was given consideration when determining value. It should be also noted, that technically these sales are not considered  "dated" since their time frame is still within FNMA guidelines.

A thorough search was conducted for recent comparable sales within the subject's market area. Particular attention was given to comparables with recent sale dates, similar location, age, GLA, room count and overall condition. The comparables that were chosen are the most recent within the subject's market area. They were considered the best indicators of the subject's current market value available for analysis. The data used in this analysis for the Sales Comparison Approach was obtained through the use of Multiple Listing Service, Title Company, RealQuest, Dataquick and National Data Collections.

Appraiser has provided 3 sales and 1 backup offer from the subject's market area for comparison. They are all located less than 1 mile away from the subject property. Overall, the comparables varied from the subject with respect to age, room count, GLA, lot size, ammenities and condition. Adjustments were supported by appraiser's drive-by analysis, public records, MLS comments and conversation with local realtors/brokers when possible.

GRID ADJUSTMENTS: Unless otherwise noted, all Market Grid adjustments are deemed to be self-explanatory; but all adjustments to the comparable sales reflect the appraiser's best estimates of the market's reaction to the differences between the subject property and the comparables. Though paired sales analysis is conducted to the degree that the available data allows, in most cases, data is too limited to be conclusively definitive and the adjustments are as much "qualitative" (reflecting generally  positive or negative market influences) as they are "quantitative" (irrefutably derived from hard core data and information); and unless otherwise explained, line adjustments do not exceed 10% of the sale price of the comparable being adjusted. This approach adequately serves to ascribe or to depreciate value to any factor that is generally considered to have a measurable impact upon value. In any case, the adjustment values utilized are reasonable relative to the limited amount of data that is typically available; as well as to anticipated market reaction to various property characteristics as is noted through experience in this and like markets and input from local brokers.

**Line item adjustments for comparables #1 thru #4:**

Site size: An adjustment was based on $2.5/SF.

Gross living area:  An adjustment of $30/SF was used to calculate differences exceeding 100 SF.

Adjustments for bedroom count differences of the comparables relative to the subject property were not made, as bedroom count differences are typically reflected within gross living area adjustments. Adjustments were made for gross living area and bathroom count differences if applicable, within the market approach to value.

Garage: An adjustment of $5,000 was given.

Condition:  Subject appears to be in overall average (C4) condition as observed by appraiser at time of inspection. Comparable #2 was considered superior (C3) to the subject with respect to overall condition. Therefore, an adjustment of $15,000 was given. Condition ratings were supported by MLS comments, supporting interior photos and appraiser's actual site observations.

Location/Traffic: An adjustment of $4,500 was given on proximity to traffic street & commercial buildings (subject to noise detriment).

Design/Appeal: On occasion, the lack of inventory resulted in the use of some comparables that may differ somewhat in the architectural design/appeal. Due to the subjective nature of this appeal factor, no adjustments were made.

Age/Quality/Condition Comments & Adjustments: Differences in effective age were incorporated into overall quality and condition adjustments, and adjustments were based on close drive-by scrutiny supplemented with MLS and especially broker input, when applicable.

**COMPARABLE COMMENTS:**

Comparable #1 is a recent sale and located within the subject's market area. It's similar to the subject property in respect to overall condition, GLA, bed/bath count, lot size and garage.  It was adjusted for concession amount. It's appears the concession amount of $10,000 is not typical for the subject's market area.  Based on the MLS description: "*Beautiful and charming 2 bedrooms, 1 bathroom. Perfect for first time buyers or investor. Lot have potential for expanding. Great location near schools, buss and fwys.*"

(NOTE 1: The appraiser notes that digital photos were utilized in this report, unfortunately, some of the "JPGs" were corrupted for comparable #1, therefore, MLS photos were utilized. The appraiser affirms their accurate representation.)

Comparable #2 is a recent sale and located within the subject's market area. It's similar to the subject property in respect to

| | | | | |
|---|---|---|---|---|
| Signature | _Kenneth Le_ | | Signature | |
| Name | Kenneth Le | | Name | |
| Date Signed | 10/02/2014 | | Date Signed | |
| State Certification # | | State CA | State Certification # | State |
| Or State License # | AL042794 | State | Or State License # | State |

**Supplemental Addendum**

File No. ANG694

| | | | | | |
|---|---|---|---|---|---|
| Client | Law Office of Luis G. Torres | | | | |
| Property Address | 14534 Painter Ave | | | | |
| City | Norwalk | County Los Angeles | State CA | Zip Code | 90650 |
| Owner | Valentin Espinosa & Edith | | | | |

GLA and bathroom count. It was adjusted for lot size, lacks of garage and superior in overall condition. Based on the MLS description: *"Standard sale!!! In the heart of Norwalk, this beautiful home has been completed remodeled! Upgrades throughout! Open concept kitchen features brand new custom shaker style cabinets with upgraded quartz countertops and stainless steel appliances including range and microwave. Upgraded laminate flooring in all bedrooms! New dual paned windows. The home features a bright, welcoming living room. Updated bathroom features new upgraded custom vanity and mirror, and new fixtures. Great location!!! Close to Ramona Park, entertainment, shopping, and so much more!"*

Comparable #3 is a recent sale and located within the subject's market area. It's similar to the subject property in respect to overall condition, GLA, bed/bath count and garage. It was adjusted for lot size and location. Based on the MLS description: *"STANDARD SALE*** HOME HAS FAIRLY NEW PAINT IN AND OUT, 2 BEDROOMS WITH 1 FULL BATHROOM, HALLWAY CLOSET ALONG WITH A SEPARATE CABINETS SPACE, VINYL WINDOWS, WALL HEATER, WINDOW A/C ONLY, LAMINATE FLOOR AND CARPETS IN BOTH BEDROOMS, GRANITE COUNTER, LOTS OF KITCHEN CABINETS WITH A PANTRY. HOME IS IN GOOD CONDITION. BIG BACK YARD FOR EXPANSION OR FOR A POOL, SEPARATE STORAGE ROOM USED AS BONUS ROOM. ONE ATTACHED GARAGE CONVERTED ROOM WITH PERMIT AND COVERED LAUNDRY AREA ATTACHED TO GARAGE AREA."*

Comparable #4 is an backup offer and located within the subject's market area. It's similar to the subject property in respect to overall condition, bathroom count and lot size. It was adjusted for GLA and garage. Based on the MLS descriptions: *"This is a great house in a great area!! and a standard sale too!! Remodeled bath, all new windows, hardwood and ceramic tile floors, large yard, RV parking, two car garage off the alley."*

**FINAL RECONCILIATION:**

All closed sales are adjusted under Adjustment Guidelines not exceeding 25% Gross and 15% Net adjustments. Value is derived from the actual sale prices and adjusted values of all the sales with all comparables contributing to a reliable value range. Sales comparison analysis adjusted value brackets for all closed sales ranges at $315,000. Subject's estimated value was established at the lower end of this bracket based on the C4 condition. Most weight were given to comparables #1 & 3; Comparables #1 & 3 were weighted due to their recent sale, close proximity to the subject, similar in overall condition, GLA, room count and garage. Please note comparable #4 is an backup offer and located within the subject's market area. It help to provide a reliable indication of current market trends relevant to the subject property as well as additional support for subject's appraised value. All other adjustments within the sales comparison grid are considered self-explanatory and conforming to Fannie Mae guidelines. The comparables bracket the subject's estimated market value both before and after adjustments were applied.

NOTE: Predominant value of $350,000 are typically larger homes ranging from 1,000 sq.ft. to 1,200 sq.ft. of GLA with similar in overall condition when compared to the subject property.

**URAR: RECONCILIATION-CONDITIONS OF THE APPRAISAL**

This report is NOT a home inspection report, nor was it conducted by a licensed or qualified home or building inspector, and MAY NOT BE RELIED UPON by the client nor the clients assigns (either by permission or without consent) for full disclosure of physical or site conditions that may be defective, NOR RELIED UPON for any other use, other than the declared Intended Use of this Appraisal Report. The appraiser is not responsible for matters of a legal nature that may affect the property in regards to its structural integrity or that which is non-code conforming in matters of electrical, plumbing, and/or architecturally.

The appraiser determined the subject's Highest and Best Use, after giving consideration to what is: (1) legally permissible and probable, (zoning allowances, etc.), (2) physically possible, (3) economically and financially feasible and (4) what is most profitable, yielding the highest net return on the land and improvements.

The appraiser obtained the information, estimates, and opinions that are expressed within this appraisal report from sources that were considered to be reliable and believes them to be true and correct. The appraiser does not assume responsibility for the accuracy of such items that were furnished by other parties. To the best of the appraiser's knowledge the information contained within this appraisal report is true and correct, and appraiser has not knowingly withheld any significant information.

The appraiser reserves the right to re-analyze the data, to consider alternative approaches and to change the estimate of value, if at a future point it is verifiable that the appraiser received and applied misinformation during the preparation of this report and value was thereby influenced, either positively or negatively.

The appraiser is not responsible for matters of a legal nature that may affect the property being appraised. Unless otherwise noted, no original structure permits were reviewed by the appraiser, neither was there any review of any permits and/or Certificates of Occupancy for the noted improvements. The appraisal report is made "As Is" and is based upon on-site inspection and information in the Public Records. It is left to the client's discretion to confirm the legality of all or any of the subject's improvements.

| | | |
|---|---|---|
| Signature *Kenneth Le* | Signature | |
| Name  Kenneth Le | Name | |
| Date Signed  10/02/2014 | Date Signed | |
| State Certification # | State CA | State Certification # | State |
| Or State License #  AL042794 | State | Or State License # | State |

Assumptions and Limiting Conditons                                    File No. ANG694

| Client | Law Office of Luis G. Torres | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 14534 Painter Ave | | | | | |
| City | Norwalk | County | Los Angeles | State | CA | Zip Code | 90650 |
| Owner | Valentin Espinosa & Edith | | | | | |

# Assumptions and Limiting Conditions

This appraisal report is subject to the following assumptions and limiting conditions:

1.    The date of value for which the conclusions and opinions expressed in this report apply, is set forth in the letter of transmittal.  Further, the dollar amount of any value opinion rendered in this report is based in terms of U.S. dollar.

2.    The appraiser assumes no responsibility for economic or physical factors which may affect the opinions in this report which occur after the date of the letter transmitting the report.

3.    The information furnished by others is believed to be reliable.  However, no warranty is given for its accuracy.  Information that may have been relied upon is detailed in the report.

4.    Title is assumed to be marketable and free and clear of all liens, encumbrances, easements and restrictions except those specifically discussed in the report.  The property is appraised assuming it to be under responsible ownership and competent management, and available for its highest and best use.

5.    The appraiser assumes no responsibility for hidden or unapparent conditions of the property, subsoil or structures that render it more or less valuable.  No responsibility is assumed for arranging for engineering studies thaty may be required.

6.    The property is appraised assuming it to be in full compliance with all applicalble federal, state and local environmental regulations and laws, unless otherwise stated in the report.

7.    No engineering survey has been made by the appraiser.  Except as specifically stated, date relative to size and area was taken from sources considered reliable and no encroachments of real property improvements is considered to exist.

8.    No opinion is expressed as to the value of the subsurface oil, gas or mineral rights or whether the property is subject to surface entry for the exploration or removal of such materials except as is expressly stated.

9. Maps, plats and exibits which may or may not be included are for illustration only and as an aid in visualizing matters discussed within the report.  They should not be considered as surveys or relied upon for any other purpose, nor should they be removed from the report.

10.    No opinion is intended to be expressed for matters which require legal expertise or specialized investigation or knowledge beyond that customarily employed by real estate appraisers.

11.    Possession of this report, or a copy of it, does not carry with it the right of publication.  Further, neither all nor any part of this appraisal shall be disseminated to the general public by use of advertising media or other media for public communication without prior written consent of the signer of this report.

12.    No soils or geologic investigation reports were available to the appraiser.  The soils are assumed to be stable and of suitable load bearing quality unless clearly differentiated within the report.

13.    Since earthquakes are not uncommon in the area, no responsibility is assumed due to their possible effect on individual properties, unless detailed geologic reports are made available.

14.    No hazardous waste assessment was furnished to the appraiser.  No evidence to indicate past or present storage of hazardous waste materials was observed on the subject site.  The appraisal assumes that no hazardous waste materials are present on the site or surrounding area, which would prevent or substantially alter the possible sale of the site(s) as appraised.

15.    All land areas state in this report, lot sizes, pad sizes and gross acreage are also based on information found in public records in the formof Assessor Plat Maps.  No survey was performed.

16.    Testimony or attendance in court or at any other hearing is not required by reason of rendering this appraisal, unless such arrangements are made a reasonalbe time in advance.  I am not averse to providing expert testimony as a separate assignment, which would require additional fees.  The preparation of this report does not include any time allocation for consultation with legal counsel, court appearances or testimony.

17.    Our liablility is limited to that of our named client and to the extent of the fee charged.  Third parties are not anticipated or authorized to use or rely upon this appraisal without prior written consent.  Acceptance of third party liability requires a prior written agreement and an additional fee.  Should the client anticipate a third party to make privileged use of this report, they are obligated to contact the appraiser immediately and in writing.

18.    The use of this report is anticipated to serve only the purpose stated in the intended use section of this report.  Additional uses of this report are not anticipated in the acceptance of this assignment by the appraiser.  Reports prepared to serve the defined purpose may not be provide adequate detail or documentation to meet the requirements of another unanticipated or undefined purpose.  Definitions used in this report may not apply to another unanticipated or undefined purpose.

19.  CONFIDENTIALITY OF INTENDED USER, MORTGAGE FRAUD AND RELATED ISSUES: If during the execution of this assignment, appraiser has reason to suspect or has otherwise obtained reasonable evidence of suspicious activitiy or an attempt to commit an unlawful act or acts by a party or parties identified as the Intended User of this appraisal report, the "Client" shall waive all rights of confidentiality for this assignment and consents to the action of appraiser to report all suspicious activity to the Federal Bureau of Investigations, the Department of Real Estate, the Department of Corporations and any other legal entity related to the prosecution of criminal acts.  Appraiser has exercised sufficient due-diligence and has utilized methods specifically employed to discover unlawful activity but provides no expressed or implied warranties or guarantees that any or all unlawful acts or acts related to this assignment have been discovered.  Appraiser certifies that he or she has not willfully participated in an unlawful act or acts during the execution of this assignment and that any unlawful activity, if discovered, has been accurately reported herein.  In the event an unlawful act or acts has been perpetrated by a party or parties identified as the Intended User of this report that has gone undetected by appraiser, the "Client", the borrower, another lender at the request of the borrower, the mortgagee or its successors and assigns, mortgage insurers, government sponsored enterprises and other secondary market particpants that have relied on this report shall waive any and all rights of prosecution against appraiser and agree to hold appraiser harmless from any and all liability resulting from the unlawful acts or acts committed during the execution of this assignment without the appraiser's direct knowledge or consent.

Clarifications – Addendum

File No. ANG694

| Client | Law Office of Luis G. Torres | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 14534 Painter Ave | | | | | | |
| City | Norwalk | County | Los Angeles | State | CA | Zip Code | 90650 |
| Owner | Valentin Espinosa & Edith | | | | | | |

# CLARIFICATIONS

## Clarifications of Assumptions, Limiting Conditions, Certifications and Scope of Work

The following is noted in order to define terms as they are used in the appraisal report. This is not intended to be a modification of the certification, but a clarification, which is required to be in compliance with USPAP.

A Restricted Use Appraisal Report was used to report the results of my (our) appraisal. The scope of work explanations discussed here and within the body of the report further define, clarify and document what the appraiser(s) did and or did not do in order to develop the appraisal and report the value opinion, based on the complexity of this appraisal assignment and or as a result of a suplentary Agreement or Engagement Letter as accepted by the appraiser(s) and client identified with the appraisal report.

If no written specific and or supplemental Scope of Work was agreed upon with the client (prior to accepting the assignment, by formal engagement letter and included in this report) the Scope of Work outlined here and within the report, is considered to be representative of what typical users of appraisal services would require and in general, what appaisers would provide as reasonalbe, acceptance and sufficient for the stated intended user's needs.

**SCOPE OF WORK:** It should be noted that the Appraiser(s) conducted visual inspection of only the readily accessible areas of the property, viewing only those components of the property which were clearly visible from the ground or floor level. No professional testing was conducted for mechanical, plumbing or electrical systems. Comments on the condition of the foundation, roof, exterior, interior, floors, mechanical, plumbing, electrical, insulation and all other matters relating to the construction of the subject property are based upon the casual observation only and which may have been limited by the placement of personal property, furnishings, etc. so as to preclude observation of the items blocked by same. There was not observation of the attic, crawl space or other areas that would no be visible by the typical visitor to the home and or components that are hidden within walls.

Although the report may cite a general rating of the adequacy and or condition (based on observation only), it should be clearly understood that these statements are a general guide for comparison purposes (as part of the valuation process) and are not a detailed report on the physical and or operational condition of these items. The appraiser is not an expert in these matters and any opinion stated is advisory based only upon observation. This report is not a home inspection. While others may choose to rely on the report, they should not rely on it to disclose condition and defects. Such knowledge goes beyond the scope of this appraisal and as such, comments on observed conditons given in this report should not be taken as a guarantee that a problem does not exist.

"Inspection of the Subject Neighborhood" was limited to driving through the area and a representative number of streets, reviewing maps and other appropriate data including observing the comparables from the street to determine the general factors that may or may not influence the value of the subject property and research to the extent further defined in the sections following:

**REPAIRS / DETERIORATION:** The terms deficiency and livability have not been defined in the appraisal report. An effort was made to report ONLY those repair items that, in the appraiser's opinion, will affect <u>safety, adequacy and marketability</u> of the property. Deterioration consistent with the age of the
home has not been itemized.

**COST APPROACH:** The cost approach is typically utilized when improvements are new, near new or are of an unsual construction method. Additionally, the cost approach is only considered appropriate when sufficient land, building sites, etc. are available to a potential purchaser so as to make construction of improvements similar to the subject, a viable alternative to purchasing the subject. In areas whwere vacant sites (similar to the subject in location, zoning, use and utility) are not available to a potential purchaser, use of the Cost Approach and reliability of the same as a value indicator could be misleading. In cases where the Cost Approach is not required (per USPAP) or deemed necessary to the development of a reliable opinion of value, the Cost Approach has been excluded and such exclusion has been so stated within the body of the report.

If the Cost Approach was used, it represents the "replacement cost estimate" and is for "valuation purposes only." As such, it should not be relied upon for insurance purposes. The definition of "market value" is not consistent with the definition of "insurable value." If the Cost Approach was presented, a cost service such as "Marshall & Swift" (or other similar source) was used to develop the estimate. The site value opinion is based on one of several methods: extraction, allocation, the development method or from a review and analysis of sales of similar sites within the market area.

**INCOME APPROACH:** The income approach is typically utilized when sufficient investor owned properties exist within the subject's immediate area or neighborhood and when investors regularly acquire such properties that are simarly desirable to the subject for the express purpose of the investment income the provide. While rental properties may exist within any area, their existence alone should not be considered as evidence of a viable rental and investor marketplace. As such, in areas dominated by "owner occupied" units, it may not be appropriate to present or employ the income approach, unless the approach clearly represents the motivations and actions of investors in the marketplace as it relates to the subject property and immediate area. If the approach is included within the report, it was because sufficient data was found to support conclusions by the appraiser(s) that it was appropriate and meaningful to the analysis and value opinion. If the approach was not included, it was the appraiser's opinion that the data was insufficient to provide a useful and meaningful conclusion.

**EXTENT OF DATA RESEARCH - SALES/LISTINGS:** Sales and listings of the subject property and comparables have been researched, verified, analyzed, and reported in compliance with USPAP. Sales data (including listed, closed, pending & expired listings) of properties that are geographically, physically, functionally and economically similar to the subject property and that are sufficiently recent to reflect current buyer and seller actions were researched and considered. If necessary and applicable, the appraiser also researched data on comparable land and improved sales, income and expense information and construction costs; confirmed comparable sales information (as noted under "Extent of Information Verification," (see next section) and analyzed the information in applying the approach(es) used).

Depending upon the availability and reliability of various data sources, the appraiser(s) used any combination of reasonably available information from city/county records, real estate agents, owner's comments, buyer's description, assessor's records, multiple listing service (MLS) data, brochures, web site listings and visual observations to identify the relevant characteristics of the subject property. Comparables were selected based on physical, functional, economic and location characteristics with the sales cited in the report considered to be most relevant to the analysis of subject property. These sales were adjusted to the subject to reflect the market's reaction to differences if any.

**EXTENT OF INFORMATION VERIFICATION:** Represenative samples of disinterested sources for information and data include but are not limited to County/City online records - Recorder, Treasurer, Zoning, GIS, Online Assessor Property Databases - Sales, Property Characteristics, Personal observation - Condition, Location, Physical attributes, Real Estate Transaction Declaration documents - Sale date, Personal property. In addition, the subject's market area was examined to determine the demand for and marketability of the property within the subject's classification.

When and where possible, the applicable information was verified with sources deemed to be reliable and from a disinterested party or corroborated with a 3rd party source. In some cases, the motivations of the parties and other factors (terms, arms-length transactions, etc.) may not have been available and the data was used at "face value as factually accurate."

The appraiser was not supplied with a survey of the subject site and did not check the land records for recorded easements and have reported

**Clarifications – Addedum**

| Client | Law Office of Luis G. Torres | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 14534 Painter Ave | | | | | | |
| City | Norwalk | County | Los Angeles | State | CA | Zip Code | 90650 |
| Owner | Valentin Espinosa & Edith | | | | | | |

only apparent easements and encroachments.  Unless otherwise stated within the report, no effort was made to ascertain whether the subject is located with the appropriate setbacks, as dictated by zoning, building or other regulations.

**PUBLIC / PRIVATE DATA SOURCES:**  My (our) appraisal practice is limited to Southern California.  I have access to public data; the local Multiple Listing Service; a nationally recognized cost estimation service; FEMA flood data and maps; and private information contained within my office files considered necessary and appropriate for this assignment.

**DVERSE FACTORS:**  As cited in the "Assumption & Limiting Conditions," is subjective and subject to broad interpretation.  Many properties will have some form of physical depreciation, deficiency or livability issues, dependent upon the motivations and standards of the party observing the property.  A property may also be impacted to varying degrees by a wide range of factors internal or external to the property that could be considered "adverse" by someone.

Absent detailed written directives and specific guidelines from the lender/client, the appraiser(s) made a visual inspection of the property and its market environment (as cited elsewhere in the Scope of Work) and noted factors that may impact the marketability and livability to potential buyers upon the appraiser's knowledge of the market and or as evidenced by sales or properties with similar or comparable conditions.  Such items noted in the report were considered within the valuation approaches that were applied to the analysis.

While some in the market may consider factors such as drug labs, registered sex offenders, criminal activity, interim rehabilitation facilities, halfway houses or similar uses as "adverse" unless cited within the report, the appraiser(s) has made no attempt to investigate or discover such activities as part of this assignment, unless such factors were readily apparent and obviously impacting the subject property as evidenced by market data.  If the intended user has concerns in these areas, it is highly recommended that they secure this information from a reliable source.

**DISCLOSURE / DISTRIBUTION:**  Regardless of who paid for this assignment, the intended user is only the lender/client stated within the report.  The appraisal and report may be inappropriate for use by parties other than the intended user and could place them at risk.  Despite the means of possession fo the report, this appraisal should not be used or relied on by anyone other than the stated intended user and for the stated/intended purpose.

**THE VALUE OPINION:**  The value opinion stated in the report is based on my (our) analysis as of the effective date shown in the report.  The value opinion considers the productivity, economic and physical conditions of the property only as of the date of value cited.  As market conditions change, this value opinion may not be valid in another time period.  Personal property such as furnishings, equipment or other items that may be included with a sale or transfer of the property were excluded from the value unless such items are necessary for the operations of the property (garage door remotes, pool remotes, etc) and would normally be a part of the mechanical or operational equipment that is considered realty.

| Client | Law Office of Luis G. Torres | | | File No. ANG694 |
|---|---|---|---|---|
| Property Address | 14534 Painter Ave | | | |
| City | Norwalk | County Los Angeles | State CA | Zip Code 90650 |
| Owner | Valentin Espinosa & Edith | | | |

## APPRAISAL AND REPORT IDENTIFICATION

### This Report is one of the following types:

☐ **Appraisal Report** (A written report prepared under Standards Rule 2-2(a), pursuant to the Scope of Work, as disclosed elsewhere in this report.)

☒ **Restricted Appraisal Report** (A written report prepared under Standards Rule 2-2(b), pursuant to the Scope of Work, as disclosed elsewhere in this report, restricted to the stated intended use by the specified client or intended user.)

### Comments on Standards Rule 2-3

I certify that, to the best of my knowledge and belief:
— The statements of fact contained in this report are true and correct.
— The reported analyses, opinions, and conclusions are limited only by the reported assumptions and limiting conditions and are my personal, impartial, and unbiased professional analyses, opinions, and conclusions.
— Unless otherwise indicated, I have no present or prospective interest in the property that is the subject of this report and no personal interest with respect to the parties involved.
— Unless otherwise indicated, I have performed no services, as an appraiser or in any other capacity, regarding the property that is the subject of this report within the three-year period immediately preceding acceptance of this assignment.
— I have no bias with respect to the property that is the subject of this report or the parties involved with this assignment.
— My engagement in this assignment was not contingent upon developing or reporting predetermined results.
— My compensation for completing this assignment is not contingent upon the development or reporting of a predetermined value or direction in value that favors the cause of the client, the amount of the value opinion, the attainment of a stipulated result, or the occurrence of a subsequent event directly related to the intended use of this appraisal.
— My analyses, opinions, and conclusions were developed, and this report has been prepared, in conformity with the Uniform Standards of Professional Appraisal Practice that were in effect at the time this report was prepared.
— Unless otherwise indicated, I have made a personal inspection of the property that is the subject of this report.
— Unless otherwise indicated, no one provided significant real property appraisal assistance to the person(s) signing this certification (if there are exceptions, the name of each individual providing significant real property appraisal assistance is stated elsewhere in this report).

### Comments on Appraisal and Report Identification
Note any USPAP related issues requiring disclosure and any State mandated requirements:

| APPRAISER: | SUPERVISORY or CO-APPRAISER (if applicable): |
|---|---|
| Signature: _Kenneth Le_ | Signature: _____ |
| Name: Kenneth Le | Name: _____ |
| State Certification #: _____ | State Certification #: _____ |
| or State License #: AL042794 | or State License #: _____ |
| State: CA   Expiration Date of Certification or License: 07/04/2015 | State:   Expiration Date of Certification or License: _____ |
| Date of Signature and Report: 10/02/2014 | Date of Signature: _____ |
| Effective Date of Appraisal: 10/01/2014 | |
| Inspection of Subject: ☐ None ☒ Interior and Exterior ☐ Exterior-Only | Inspection of Subject: ☐ None ☐ Interior and Exterior ☐ Exterior-Only |
| Date of Inspection (if applicable): 10/01/2014 | Date of Inspection (if applicable): _____ |

Form ID14 — "WinTOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE

**Realquest Property Profile**

RealQuest.com ® - Report                                                Page 1 of 1

## Property Detail Report

For Property Located At :
**14534 PAINTER AVE, NORWALK, CA 90650-5157**



### Owner Information

| | |
|---|---|
| Owner Name: | **ESPINOSA VALENTIN & EDITH** |
| Mailing Address: | **14534 PAINTER AVE, NORWALK CA 90650-5157 C045** |
| Vesting Codes: | **HW / / CP** |

### Location Information

| | | | | | |
|---|---|---|---|---|---|
| Legal Description: | **TRACT NO 15584 LOT 50** | | | | |
| County: | **LOS ANGELES, CA** | APN: | | **8070-006-003** | |
| Census Tract / Block: | **5524.00 / 2** | Alternate APN: | | | |
| Township-Range-Sect: | | Subdivision: | | **15584** | |
| Legal Book/Page: | **354-21** | Map Reference: | | **82-C2 / 737-B3** | |
| Legal Lot: | **50** | Tract #: | | **15584** | |
| Legal Block: | | School District: | | **NORWALK LA MIRADA** | |
| Market Area: | **M1** | School District Name: | | | |
| Neighbor Code: | | Munic/Township: | | | |

### Owner Transfer Information

| | | | |
|---|---|---|---|
| Recording/Sale Date: | / | Deed Type: | |
| Sale Price: | | 1st Mtg Document #: | |
| Document #: | | | |

### Last Market Sale Information

| | | | |
|---|---|---|---|
| Recording/Sale Date: | **03/30/2007 / 02/09/2007** | 1st Mtg Amount/Type: | **$348,000 / CONV** |
| Sale Price: | **$435,000** | 1st Mtg Int. Rate/Type: | **5.00 / ADJ** |
| Sale Type: | **FULL** | 1st Mtg Document #: | **749515** |
| Document #: | **749514** | 2nd Mtg Amount/Type: | **$87,000 / CONV** |
| Deed Type: | **GRANT DEED** | 2nd Mtg Int. Rate/Type: | **/** |
| Transfer Document #: | | Price Per SqFt: | **$580.00** |
| New Construction: | | Multi/Split Sale: | |
| Title Company: | **LAWYERS TITLE** | | |
| Lender: | **CITIMORTGAGE** | | |
| Seller Name: | **DAILO ROLANDO & NANNETTE B** | | |

### Prior Sale Information

| | | | |
|---|---|---|---|
| Prior Rec/Sale Date: | **06/26/1997 /** | Prior Lender: | **COUNTRYWIDE HM LNS INC** |
| Prior Sale Price: | **$119,000** | Prior 1st Mtg Amt/Type: | **$118,282 / CONV** |
| Prior Doc Number: | **956424** | Prior 1st Mtg Rate/Type: | **/ ADJ** |
| Prior Deed Type: | **GRANT DEED** | | |

### Property Characteristics

| | | | | | |
|---|---|---|---|---|---|
| Gross Area: | | Parking Type: | **ATTACHED GARAGE** | Construction: | |
| Living Area: | **750** | Garage Area: | | Heat Type: | **HEATED** |
| Tot Adj Area: | | Garage Capacity: | **1** | Exterior wall: | **STUCCO** |
| Above Grade: | | Parking Spaces: | **1** | Porch Type: | |
| Total Rooms: | **4** | Basement Area: | | Patio Type: | **COVERED PATIO** |
| Bedrooms: | **2** | Finish Bsmnt Area: | | Pool: | |
| Bath(F/H): | **1 /** | Basement Type: | | Air Cond: | |
| Year Built / Eff: | **1949 / 1949** | Roof Type: | | Style: | **CONVENTIONAL** |
| Fireplace: | **/** | Foundation: | **RAISED** | Quality: | **GOOD** |
| # of Stories: | **1.00** | Roof Material: | **WOOD SHAKE** | Condition: | **GOOD** |
| Other Improvements: | **FENCE;FENCED YARD** | | | | |

### Site Information

| | | | | | |
|---|---|---|---|---|---|
| Zoning: | **NOR1*** | Acres: | **0.12** | County Use: | **SINGLE FAMILY RESID (0100)** |
| Lot Area: | **5,152** | Lot Width/Depth: | **52 x 100** | State Use: | |
| Land Use: | **SFR** | Res/Comm Units: | **/** | Water Type: | **PUBLIC** |
| Site Influence: | | | | Sewer Type: | **TYPE UNKNOWN** |

### Tax Information

| | | | | | |
|---|---|---|---|---|---|
| Total Value: | **$308,000** | Assessed Year: | **2014** | Property Tax: | **$2,916.34** |
| Land Value: | **$246,000** | Improved %: | **20%** | Tax Area: | **6761** |
| Improvement Value: | **$62,000** | Tax Year: | **2013** | Tax Exemption: | |
| Total Taxable Value: | **$308,000** | | | | |

http://pro.realquest.com/jsp/report.jsp?&client=&action=confirm&type=getreport&recordn...   10/2/2014

# Building Sketch

| Client | Law Office of Luis G. Torres | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 14534 Painter Ave | | | | | | |
| City | Norwalk | County | Los Angeles | State | CA | Zip Code | 90650 |
| Owner | Valentin Espinosa & Edith | | | | | | |



**Area Calculations Summary**

| Living Area | | Calculation Details |
|---|---|---|
| First Floor | 752 Sq ft | 31 × 22 = 682 |
| | | 4 × 17.5 = 70 |
| **Total Living Area (Rounded):** | **752 Sq ft** | |
| **Non-living Area** | | |
| 1 Car Attached | 220 Sq ft | 20 × 11 = 220 |
| Enclosed Patio | 496 Sq ft | 16 × 31 = 496 |

**Location Map**

| Client | Law Office of Luis G. Torres | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 14534 Painter Ave | | | | | |
| City | Norwalk | County | Los Angeles | State | CA | Zip Code | 90650 |
| Owner | Valentin Espinosa & Edith | | | | | |



# Plat Map

| Client | Law Office of Luis G. Torres | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 14534 Painter Ave | | | | | | |
| City | Norwalk | County | Los Angeles | State | CA | Zip Code | 90650 |
| Owner | Valentin Espinosa & Edith | | | | | | |



**Subject Photo Page**

| Client | Law Office of Luis G. Torres | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 14534 Painter Ave | | | | | |
| City | Norwalk | County | Los Angeles | State | CA | Zip Code | 90650 |
| Owner | Valentin Espinosa & Edith | | | | | |



**Subject Front**

| | |
|---|---|
| 14534 Painter Ave | |
| Sales Price | |
| Gross Living Area | 752 |
| Total Rooms | 4 |
| Total Bedrooms | 2 |
| Total Bathrooms | 1.0 |
| Location | N;Res; |
| View | N;Res; |
| Site | 5,200 sf |
| Quality | Q4 |
| Age | 65 |



**Subject Rear**



**Subject Street**

**Photograph Addendum**

| Client | Law Office of Luis G. Torres | | | | |
|---|---|---|---|---|---|
| Property Address | 14534 Painter Ave | | | | |
| City | Norwalk | County | Los Angeles | State | CA | Zip Code | 90650 |
| Owner | Valentin Espinosa & Edith | | | | |



**Additional Subject Front**



**Additional Subject Rear**



**Subject Left Side**



**Subject Right Side**



**Additional Subject Street-Alternate**



**Storage Shed At Rear Yard**

**Photograph Addendum**

| Client | Law Office of Luis G. Torres | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 14534 Painter Ave | | | | | |
| City | Norwalk | County | Los Angeles | State | CA | Zip Code  90650 |
| Owner | Valentin Espinosa & Edith | | | | | |



**Kitchen**



**Living Room**



**Bedroom**



**Bedroom**



**Bathroom**



**Additional Photo of Bathroom**

Main File No. 050904 | Page #23

## Photograph Addendum

| Client | Law Office of Luis G. Torres | | | | |
|---|---|---|---|---|---|
| Property Address | 14534 Painter Ave | | | | |
| City | Norwalk | County | Los Angeles | State CA | Zip Code 90650 |
| Owner | Valentin Espinosa & Edith | | | | |



**Bedroom At Garage Conversion**



**Interior View of Enclosed Patio**



**Wall Heating Unit**



**Water Heater Securely Double
Strapped At Both Ends**



**Smoke Detector Installed**



**Exterior View of Enclosed Patio**

## Comparable Photo Page

| Client | Law Office of Luis G. Torres | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 14534 Painter Ave | | | | | |
| City | Norwalk | County | Los Angeles | State | CA | Zip Code | 90650 |
| Owner | Valentin Espinosa & Edith | | | | | |



### Comparable 1

14503 Painter Ave
| | |
|---|---|
| Prox. to Subject | 0.07 miles NW |
| Sales Price | 325,000 |
| Gross Living Area | 775 |
| Total Rooms | 4 |
| Total Bedrooms | 2 |
| Total Bathrooms | 1.0 |
| Location | N;Res; |
| View | N;Res; |
| Site | 5,000 sf |
| Quality | Q4 |
| Age | 65 |
| **MLS Photo | |



### Comparable 2

14520 Pontlavoy Ave
| | |
|---|---|
| Prox. to Subject | 0.25 miles E |
| Sales Price | 320,000 |
| Gross Living Area | 836 |
| Total Rooms | 5 |
| Total Bedrooms | 3 |
| Total Bathrooms | 1.0 |
| Location | N;Res; |
| View | N;Res; |
| Site | 2,382 sf |
| Quality | Q4 |
| Age | 56 |



### Comparable 3

14324 Madris Ave
| | |
|---|---|
| Prox. to Subject | 0.97 miles W |
| Sales Price | 315,000 |
| Gross Living Area | 760 |
| Total Rooms | 4 |
| Total Bedrooms | 2 |
| Total Bathrooms | 1.0 |
| Location | A;ProxTrSt;Comm. |
| View | N;Res; |
| Site | 6,230 sf |
| Quality | Q4 |
| Age | 66 |

## Comparable Photo Page

| Client | Law Office of Luis G. Torres | | | | |
|---|---|---|---|---|---|
| Property Address | 14534 Painter Ave | | | | |
| City | Norwalk | County Los Angeles | | State CA | Zip Code 90650 |
| Owner | Valentin Espinosa & Edith | | | | |



### Comparable 4

| | |
|---|---|
| | 13049 Liggett St |
| Prox. to Subject | 0.18 miles N |
| Sales Price | 329,000 |
| Gross Living Area | 996 |
| Total Rooms | 5 |
| Total Bedrooms | 3 |
| Total Bathrooms | 1.0 |
| Location | N;Res; |
| View | N;Res; |
| Site | 5,976 sf |
| Quality | Q4 |
| Age | 65 |

### Comparable 5

| | |
|---|---|
| Prox. to Subject | |
| Sales Price | |
| Gross Living Area | |
| Total Rooms | |
| Total Bedrooms | |
| Total Bathrooms | |
| Location | |
| View | |
| Site | |
| Quality | |
| Age | |

### Comparable 6

| | |
|---|---|
| Prox. to Subject | |
| Sales Price | |
| Gross Living Area | |
| Total Rooms | |
| Total Bedrooms | |
| Total Bathrooms | |
| Location | |
| View | |
| Site | |
| Quality | |
| Age | |

# UNIFORM APPRAISAL DATASET (UAD) DEFINITIONS ADDENDUM
*(Source: Fannie Mae UAD Appendix D: UAD Field-Specific Standardization Requirements)*

## Condition Ratings and Definitions

**C1**

The improvements have been very recently constructed and have not previously been occupied. The entire structure and all components are new and the dwelling features no physical depreciation.*

*\*Note: Newly constructed improvements that feature recycled materials and/or components can be considered new dwellings provided that the dwelling is placed on a 100% new foundation and the recycled materials and the recycled components have been rehabilitated/re-manufactured into like-new condition. Recently constructed improvements that have not been previously occupied are not considered "new" if they have any significant physical depreciation (i.e., newly constructed dwellings that have been vacant for an extended period of time without adequate maintenance or upkeep).*

**C2**

The improvements feature no deferred maintenance, little or no physical depreciation, and require no repairs. Virtually all building components are new or have been recently repaired, refinished, or rehabilitated. All outdated components and finishes have been updated and/or replaced with components that meet current standards. Dwellings in this category either are almost new or have been recently completely renovated and are similar in condition to new construction.

**C3**

The improvements are well maintained and feature limited physical depreciation due to normal wear and tear. Some components, but not every major building component, may be updated or recently rehabilitated. The structure has been well maintained.

**C4**

The improvements feature some minor deferred maintenance and physical deterioration due to normal wear and tear. The dwelling has been adequately maintained and requires only minimal repairs to building components/mechanical systems and cosmetic repairs. All major building components have been adequately maintained and are functionally adequate.

**C5**

The improvements feature obvious deferred maintenance and are in need of some significant repairs. Some building components need repairs, rehabilitation, or updating. The functional utility and overall livability is somewhat diminished due to condition, but the dwelling remains useable and functional as a residence.

**C6**

The improvements have substantial damage or deferred maintenance with deficiencies or defects that are severe enough to affect the safety, soundness, or structural integrity of the improvements. The improvements are in need of substantial repairs and rehabilitation, including many or most major components.

## Quality Ratings and Definitions

**Q1**

Dwellings with this quality rating are usually unique structures that are individually designed by an architect for a specified user. Such residences typically are constructed from detailed architectural plans and specifications and feature an exceptionally high level of workmanship and exceptionally high-grade materials throughout the interior and exterior of the structure. The design features exceptionally high-quality exterior refinements and ornamentation, and exceptionally high-quality interior refinements. The workmanship, materials, and finishes throughout the dwelling are of exceptionally high quality.

**Q2**

Dwellings with this quality rating are often custom designed for construction on an individual property owner's site. However, dwellings in this quality grade are also found in high-quality tract developments featuring residence constructed from individual plans or from highly modified or upgraded plans. The design features detailed, high quality exterior ornamentation, high-quality interior refinements, and detail. The workmanship, materials, and finishes throughout the dwelling are generally of high or very high quality.

**Q3**

Dwellings with this quality rating are residences of higher quality built from individual or readily available designer plans in above-standard residential tract developments or on an individual property owner's site. The design includes significant exterior ornamentation and interiors that are well finished. The workmanship exceeds acceptable standards and many materials and finishes throughout the dwelling have been upgraded from "stock" standards.

**Q4**

Dwellings with this quality rating meet or exceed the requirements of applicable building codes. Standard or modified standard building plans are utilized and the design includes adequate fenestration and some exterior ornamentation and interior refinements. Materials, workmanship, finish, and equipment are of stock or builder grade and may feature some upgrades.

Form UADDEFINE — "WinTOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE

# UNIFORM APPRAISAL DATASET (UAD) DEFINITIONS ADDENDUM
*(Source: Fannie Mae UAD Appendix D: UAD Field-Specific Standardization Requirements)*

## Quality Ratings and Definitions (continued)

### Q5

Dwellings with this quality rating feature economy of construction and basic functionality as main considerations. Such dwellings feature a plain design using readily available or basic floor plans featuring minimal fenestration and basic finishes with minimal exterior ornamentation and limited interior detail. These dwellings meet minimum building codes and are constructed with inexpensive, stock materials with limited refinements and upgrades.

### Q6

Dwellings with this quality rating are of basic quality and lower cost; some may not be suitable for year-round occupancy. Such dwellings are often built with simple plans or without plans, often utilizing the lowest quality building materials. Such dwellings are often built or expanded by persons who are professionally unskilled or possess only minimal construction skills. Electrical, plumbing, and other mechanical systems and equipment may be minimal or non-existent. Older dwellings may feature one or more substandard or non-conforming additions to the original structure

## Definitions of Not Updated, Updated, and Remodeled

### Not Updated

**Little or no updating or modernization. This description includes, but is not limited to, new homes.**

Residential properties of fifteen years of age or less often reflect an original condition with no updating, if no major components have been replaced or updated. Those over fifteen years of age are also considered not updated if the appliances, fixtures, and finishes are predominantly dated. An area that is 'Not Updated' may still be well maintained and fully functional, and this rating does not necessarily imply deferred maintenance or physical/functional deterioration.

### Updated

**The area of the home has been modified to meet current market expectations. These modifications are limited in terms of both scope and cost.**

An updated area of the home should have an improved look and feel, or functional utility. Changes that constitute updates include refurbishment and/or replacing components to meet existing market expectations. Updates do not include significant alterations to the existing structure.

### Remodeled

**Significant finish and/or structural changes have been made that increase utility and appeal through complete replacement and/or expansion.**

A remodeled area reflects fundamental changes that include multiple alterations. These alterations may include some or all of the following: replacement of a major component (cabinet(s), bathtub, or bathroom tile), relocation of plumbing/gas fixtures/appliances, significant structural alterations (relocating walls, and/or the addition of) square footage). This would include a complete gutting and rebuild.

## Explanation of Bathroom Count

Three-quarter baths are counted as a full bath in all cases. Quarter baths (baths that feature only a toilet) are not included in the bathroom count. The number of full and half baths is reported by separating the two values using a period, where the full bath count is represented to the left of the period and the half bath count is represented to the right of the period.

**Example:**
3.2 indicates three full baths and two half baths.

# UNIFORM APPRAISAL DATASET (UAD) DEFINITIONS ADDENDUM
*(Source: Fannie Mae UAD Appendix D: UAD Field-Specific Standardization Requirements)*

### Abbreviations Used in Data Standardization Text

| Abbreviation | Full Name | Fields Where This Abbreviation May Appear |
|---|---|---|
| ac | Acres | Area, Site |
| AdjPrk | Adjacent to Park | Location |
| AdjPwr | Adjacent to Power Lines | Location |
| A | Adverse | Location & View |
| ArmLth | Arms Length Sale | Sale or Financing Concessions |
| ba | Bathroom(s) | Basement & Finished Rooms Below Grade |
| br | Bedroom | Basement & Finished Rooms Below Grade |
| B | Beneficial | Location & View |
| Cash | Cash | Sale or Financing Concessions |
| CtySky | City View Skyline View | View |
| CtyStr | City Street View | View |
| Comm | Commercial Influence | Location |
| c | Contracted Date | Date of Sale/Time |
| Conv | Conventional | Sale or Financing Concessions |
| CrtOrd | Court Ordered Sale | Sale or Financing Concessions |
| DOM | Days On Market | Data Sources |
| e | Expiration Date | Date of Sale/Time |
| Estate | Estate Sale | Sale or Financing Concessions |
| FHA | Federal Housing Authority | Sale or Financing Concessions |
| GlfCse | Golf Course | Location |
| Glfvw | Golf Course View | View |
| Ind | Industrial | Location & View |
| in | Interior Only Stairs | Basement & Finished Rooms Below Grade |
| Lndfl | Landfill | Location |
| LtdSght | Limited Sight | View |
| Listing | Listing | Sale or Financing Concessions |
| Mtn | Mountain View | View |
| N | Neutral | Location & View |
| NonArm | Non-Arms Length Sale | Sale or Financing Concessions |
| BsyRd | Busy Road | Location |
| o | Other | Basement & Finished Rooms Below Grade |
| Prk | Park View | View |
| Pstrl | Pastoral View | View |
| PwrLn | Power Lines | View |
| PubTrn | Public Transportation | Location |
| rr | Recreational (Rec) Room | Basement & Finished Rooms Below Grade |
| Relo | Relocation Sale | Sale or Financing Concessions |
| REO | REO Sale | Sale or Financing Concessions |
| Res | Residential | Location & View |
| RH | USDA - Rural Housing | Sale or Financing Concessions |
| s | Settlement Date | Date of Sale/Time |
| Short | Short Sale | Sale or Financing Concessions |
| sf | Square Feet | Area, Site, Basement |
| sqm | Square Meters | Area, Site |
| Unk | Unknown | Date of Sale/Time |
| VA | Veterans Administration | Sale or Financing Concessions |
| w | Withdrawn Date | Date of Sale/Time |
| wo | Walk Out Basement | Basement & Finished Rooms Below Grade |
| wu | Walk Up Basement | Basement & Finished Rooms Below Grade |
| WtrFr | Water Frontage | Location |
| Wtr | Water View | View |
| Woods | Woods View | View |

### Other Appraiser-Defined Abbreviations

| Abbreviation | Full Name | Fields Where This Abbreviation May Appear |
|---|---|---|
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

**Appraiser's License**



**E & O Insurance**

# NAVIGATORS INSURANCE COMPANY

### THIS IS BOTH A CLAIMS MADE AND REPORTED INSURANCE POLICY.

**THIS POLICY APPLIES TO THOSE CLAIMS THAT ARE FIRST MADE AGAINST THE INSURED AND REPORTED IN WRITING TO THE COMPANY DURING THE POLICY PERIOD.**

### PLEASE READ THIS POLICY CAREFULLY.

### REAL ESTATE APPRAISERS ERRORS AND OMISSIONS INSURANCE POLICY

## DECLARATIONS

POLICY NUMBER: __PH13RAL101081IV__    RENEWAL OF: ____PH12RAL101081IV

1.  **NAMED INSURED:**    Kenneth Le

2.  **ADDRESS:**    168 West Willow St Ste 189
    Pomona, CA 91768

3.  **POLICY PERIOD:   FROM:**  07/11/2013   **TO:**   07/11/2014
    12:01 A.M. Standard Time at the address of the **Named Insured** as stated in Number 2 above.

4.  **LIMITS OF LIABILITY:**
    A. $ ____500,000____  **Damages** Limit of Liability – Each **Claim**
    B. $ ____500,000____  **Claim Expenses** Limit of Liability – Each **Claim**
    C. $ ___1,000,000____  **Damages** Limit of Liability – Policy Aggregate
    D. $ ___1,000,000____  **Claim Expenses** Limit of Liability – Policy Aggregate

5.  **DEDUCTIBLE** (Inclusive of **claim expenses**):    A. $ 500 -_____Each **Claim**
                                                        B. $ 1,000 -_____Aggregate

6.  **PREMIUM:** $   835.00

7.  **RETROACTIVE DATE:**   07/11/2007

8.  **FORMS ATTACHED:**   NAV RAL NIC PF (02/11) NAV RAL 300 CA (02 11)
    NAV RAL 002 (02 11)    NAV RAL 003 (02 11)    NAV RAL 008 (02 11)
    NAV-ML-002 (11/12)

    **PROGRAM ADMINISTRATOR:**    Herbert H. Landy Insurance Agency Inc.
    75 Second Ave Suite 410  Needham, MA 02494-2876

By Acceptance of this policy the Insured agrees that the statements in the Declarations and the Application and any attachments hereto are the Insured's agreements and representations and that this policy embodies all agreements existing between the Insured and the Company or any of its representatives relating to this insurance.

**IN WITNESS WHEREOF, we have caused this policy to be signed by our President and Secretary.**

*[Emily Miner]*
Secretary

*[Stanley A. Galanski]*
President

**Navigators**
*Insuring A World In Motion®*

NAV RAL DEC (02 11)                    Page 1 of 1

# EXHIBIT "7"

B6C (Official Form 6C) (4/13)

In re    **Valentin Espinoza,**
         **Edith Espinoza**

Case No.    **2:14-bk-26945**

Debtors ,

# SCHEDULE C - PROPERTY CLAIMED AS EXEMPT

Debtor claims the exemptions to which debtor is entitled under:
(Check one box)
☐ 11 U.S.C. §522(b)(2)
☑ 11 U.S.C. §522(b)(3)

☐ Check if debtor claims a homestead exemption that exceeds
$155,675. *(Amount subject to adjustment on 4/1/16, and every three years thereafter with respect to cases commenced on or after the date of adjustment.)*

| Description of Property | Specify Law Providing Each Exemption | Value of Claimed Exemption | Current Value of Property Without Deducting Exemption |
|---|---|---|---|
| **Checking, Savings, or Other Financial Accounts, Certificates of Deposit** | | | |
| **Checking Account with Bank of America** | C.C.P. § 703.140(b)(5) | 675.00 | 675.00 |
| **Savings Account with Huntington Beach City Employees Credit Union** | C.C.P. § 703.140(b)(5) | 3,200.00 | 3,200.00 |
| **Savings Account with Chase Bank** | C.C.P. § 703.140(b)(5) | 1,000.00 | 1,000.00 |
| **Household Goods and Furnishings** | | | |
| **Various household goods** Location: 14534 Painter Ave, Norwalk CA 90650 | C.C.P. § 703.140(b)(3) | 3,500.00 | 3,500.00 |
| **Wearing Apparel** | | | |
| **Clothing** Location: 14534 Painter Ave, Norwalk CA 90650 | C.C.P. § 703.140(b)(3) | 400.00 | 400.00 |
| **Furs and Jewelry** | | | |
| **Jewelry** Location: 14534 Painter Ave, Norwalk CA 90650 | C.C.P. § 703.140(b)(4) | 50.00 | 50.00 |
| **Interests in IRA, ERISA, Keogh, or Other Pension or Profit Sharing Plans** | | | |
| **PERS Retirement Account** | 11 U.S.C. § 522(b)(3)(C) | 20,000.00 | 20,000.00 |
| **Retirement Account through employer** | 11 U.S.C. § 522(b)(3)(C) | 18,000.00 | 18,000.00 |
| **Automobiles, Trucks, Trailers, and Other Vehicles** | | | |
| **2006 GMC Yukon Denali (Approx. 97,000 miles)** Location: 14534 Painter Ave, Norwalk CA 90650 | C.C.P. § 703.140(b)(2) C.C.P. § 703.140(b)(5) | 5,100.00 8,900.00 | 14,000.00 |
| **2000 Nissan Altima (Approx. 150,000 miles)** Location: 14534 Painter Ave, Norwalk CA 90650 | C.C.P. § 703.140(b)(5) | 2,000.00 | 2,000.00 |
| **1990 Honda Accord (Approx. 255,000 miles)** Location: 14534 Painter Ave, Norwalk CA 90650 | C.C.P. § 703.140(b)(5) | 1,000.00 | 1,000.00 |
| | Total: | 63,825.00 | 63,825.00 |

**0**   continuation sheets attached to Schedule of Property Claimed as Exempt

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
**1712 W. Beverly Blvd.**
**Suite 202**
**Montebello, CA 90640**

A true and correct copy of the foregoing document entitled (*specify*):   **Debtor's Motion to Avoid Junior Lien on Principal Residence**    will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) **12/10/14**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

**United States Trustee,** ustpregion16.la.ecf@usdoj.gov

**Kathy A. Dockery,** efiling@ch13la.com

☐ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**: On (*date*) **12/10/14**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

**Honorable Sandra R. Klein**
**United States Bankruptcy Court**
**255 East Temple Street, Suite 1582**
**Los Angeles, CA 90012**

☒ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| December 10, 2014 | Carla De Los Santos | /s/ Carla De Los Santos |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is optional. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

## II. SERVED BY UNITED STATES MAIL, CERTIFIED MAIL OR OVERNIGHT MAIL (indicate method for each person or entity served):

*(Attached page to Proof of Service of Document-please include any additional or alternative addresses and attach additional pages if needed)*
*(Certified Mail required for service on a national bank.)*

| 1st lienholder *(name and address)* | Address from: | Delivery Method |
|---|---|---|
| **New Residential Investment Corp (NRZ)** **Attn: Michael Nierenberg, CEO or Officer** **1345 Avenue Of The Americas** **New York, New York 10105** | ☐ Proof of Claim ☐ Secretary of State ☐ FDIC website ☒ Other: *specify* | ☐ US Mail ☒ Certified Mail - Tracking#_____ ☐ Overnight Mail - Tracking#_____ Carrier Name: |
| 1st lienholder *(name)* and Agent for Service of Process *(name and address)* **New Residential Investment Corp (NRZ)** **Attn: Agent or Officer** **60 Livingston Avenue** **Mailcode: EP-MN-WS3D** **St Paul, MN 55107** | Address from: ☐ Proof of Claim ☐ Secretary of State ☐ FDIC website ☒ Other: *specify* **Address listed on Corporate Assignment of Deed of Trust** | Delivery Method ☐ US Mail ☒ Certified Mail - Tracking#_____ ☐ Overnight Mail - Tracking#_____ Carrier Name: |
| 1st lienholder *(name)* and Servicing Agent *(name and address)* **Fay Servicing** **Attn: Ed Fay, CEO or Officer** **939 West North Avenue #680** **Chicago, Illinois 60642** | Address from: ☐ Proof of Claim ☐ Secretary of State ☐ FDIC website ☒ Other: *specify* **Corporate address listed on Website** | Delivery Method ☐ US Mail ☒ Certified Mail - Tracking#_____ ☐ Overnight Mail - Tracking#_____ Carrier Name: |

| 2nd lienholder *(name and address)* | Address from: | Delivery Method |
|---|---|---|
| **RBS Citizens, N.A.** **Attn: Daniel J. Landers, President or Officer** **One Citizens Plaza** **Providence, RI 02903** | ☐ Proof of Claim ☐ Secretary of State ☒ FDIC website ☐ Other: *specify* | ☐ US Mail ☒ Certified Mail - Tracking#_____ ☐ Overnight Mail - Tracking#_____ Carrier Name: |
| 2nd lienholder *(name)* and Agent for Service of Process *(name and address)* **RBS Citizens, N.A.** **c/o CSC Lawyers Incorporating Service** **2710 Gateway Oaks Drive, Suite 150N** **Sacramento, CA 95833** | Address from: ☐ Proof of Claim ☒ Secretary of State ☐ FDIC website ☐ Other: *specify* | Delivery Method ☐ US Mail ☒ Certified Mail - Tracking#_____ ☐ Overnight Mail - Tracking#_____ Carrier Name: |
| 2nd lienholder *(name)* and Servicing Agent *(name and address)* **Green Tree Servicing, LLC** **7340 S. Kyrene Rd, T-120** **Tempe, AZ 85283** | Address from: ☒ Proof of Claim ☐ Secretary of State ☐ FDIC website ☐ Other: *specify* | Delivery Method ☐ US Mail ☒ Certified Mail - Tracking#_____ ☐ Overnight Mail - Tracking#_____ Carrier Name: |

| 3rd lienholder *(name and address)* | Address from: | Delivery Method |
|---|---|---|
| | ☐ Proof of Claim ☐ Secretary of State ☐ FDIC website ☐ Other: *specify* | ☐ US Mail ☐ Certified Mail - Tracking#_____ ☐ Overnight Mail - Tracking#_____ Carrier Name: |
| 3rd lienholder *(name)* and Agent for Service of Process *(name and address)* | Address from: ☐ Proof of Claim ☐ Secretary of State | Delivery Method ☐ US Mail |

This form is optional. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

December 2012                    Page 5                    **F 4003-2.4.JR.LIEN.MOTION**

| | FDIC website ☐ Other: *specify* | ☐ Certified Mail - Tracking#_____<br>☐ Overnight Mail - Tracking#_____<br>Carrier Name:_____ |
|---|---|---|
| 3rd lienholder *(name)* and Servicing Agent *(name and address)* | Address from:<br>☐ Proof of Claim ☐ Secretary of State<br>☐ FDIC website ☐ Other: *specify* | Delivery Method<br>☐ US Mail<br>☐ Certified Mail - Tracking#_____<br>☐ Overnight Mail - Tracking#_____<br>Carrier Name: |

| | | |
|---|---|---|
| Alternative/Additional Address *(name and address)* | Address from:<br>☐ Proof of Claim ☐ Secretary of State<br>☐ FDIC website ☐ Other: *specify* | Delivery Method<br>☐ US Mail<br>☐ Certified Mail - Tracking#_____<br>☐ Overnight Mail - Tracking#_____<br>Carrier Name: |
| Alternative/Additional Address *(name and address)* | Address from:<br>☐ Proof of Claim ☐ Secretary of State<br>☐ FDIC website ☐ Other: *specify* | Delivery Method<br>☐ US Mail<br>☐ Certified Mail - Tracking#_____<br>☐ Overnight Mail - Tracking#_____<br>Carrier Name: |

This form is optional. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

December 2012                               Page 6                    **F 4003-2.4.JR.LIEN.MOTION**